R. Scott Erlewine, State Bar No. 095106
rse@phillaw.com
Nicholas A. Carlin, State Bar No. 112532
nac@phillaw.com
Brian S. Conlon, State Bar No. 303456
bsc@phillaw.com
PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201
The Presidio
San Francisco, CA 94129
Telephone: 415-398-0900
Fax:         415-398-0911

Attorneys for Plaintiff
Lenza H. McElrath III

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LENZA H. MCELRATH III, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC.<br><br>Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, FALSE PROMISE, INTENTIONAL MISREPRESENTATION, VIOLATION OF CALIFORNIA LABOR CODE § 970, AND VIOLATION OF UNFAIR COMPETITION LAW**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Lenza H. McElrath III ("Plaintiff"), individually and on behalf of all others similarly situated, alleges as follows:

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

**INTRODUCTION**

1.      To fuel its meteoric rise, Defendant Uber Technologies, Inc. ("Uber" or "Defendant") devised a fraudulent scheme to recruit highly sought software engineers and others by promising in its standardized Employment Agreements the most valuable type of stock options (Investment Stock Options – "ISOs") and guaranteeing ISO treatment to the maximum extent permitted by law.  Stock options constitute the majority of Uber employees' compensation and are worth hundreds of millions of dollars, maybe more.

2.      Yet, months after employees started work, Uber breached its Employment Agreements by systematically imposing a different exercisability schedule than contained in the Employment Agreements which, according to Uber, disqualified most of the options from ISO treatment while presumably affording Uber with millions of dollars of tax deductions.  Uber also used this scheme to achieve an unfair competitive recruiting advantage over other technology companies competing for the same scarce labor pool.   To make matters worse, after employees started work, Uber systematically imposed severe limits on the time frames that employees could exercise their options (which Uber terms "Trading Windows"), in further derogation of promises contained in its Employment Agreements.

3.      Plaintiff is a senior software engineer employed by Uber.  He brings this class action lawsuit against Uber individually and on behalf of other similarly situated employees who were promised ISOs but didn't get them, and who were precluded from exercising their stock options at the promised times.

**JURISDICTION AND VENUE**

4.      Plaintiff is a resident of the State of Washington.

5.      Uber is a corporation incorporated under the laws of the State of Delaware, having its principal place of business in San Francisco, California.

6.      This Court has subject matter jurisdiction over the individual and class claims asserted in this action: a) under 28 U.S.C. § 1332(a)(1), because Plaintiff and Uber are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and

costs; and b) under the Class Action Fairness Act (28 U.S.C. § 1332(d)), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are at least 100 class members, and at least one member of the proposed class is a citizen of a state different than Uber.

7.      Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2) because Uber's principal executive offices are located within this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

## Uber's Meteoric Rise

8.      Uber is a worldwide online logistics and transportation network company headquartered in San Francisco, California.  Uber develops, markets and operates the Uber mobile "app," which allows consumers with smartphones to submit a trip request, which the software program then automatically sends to the Uber driver nearest to the consumer, alerting the driver to the location of the customer.  The Uber driver then picks up and drives the customer to his or her destination.

9.      Founded in 2009, Uber's services today are available in over 66 countries and 500 cities worldwide.  While reportedly having less than 600 employees at the end of 2013, Uber now has over 6,700 employees.  (Plaintiff's reference to employees does not include Uber drivers for purposes of this action.)  Uber today reportedly has a market cap in excess of $60 Billion.

## The Value of ISOs as a Recruiting Tool

10.      The Uber business model is dependent upon its ability to recruit talented software engineers and other employees.  There is huge demand and competition for such technology workers with a limited pool of candidates.  By far the most important recruiting tool for companies like Uber is the promise of company equity in the form of stock options.  These options can be worth millions of dollars to an employee, potentially dwarfing the employee's salary.

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

11.     The Internal Revenue Code recognizes two types of employee stock options: Incentive Stock Options ("ISOs") and Non-Qualified Stock Options ("NSOs").  26 U.S.C. §§ 421, 422.  ISOs are much more valuable to the employee.  Although both ISOs and NSOs give an employee the right to purchase a company's stock at a fixed ("exercise") price, the tax differences between ISOs and NSOs dramatically change the value of the compensation.  An ISO is generally only taxed upon sale of the stock (not upon exercise of the option) and is also subject to favorable capital gains treatment.  26 U.S.C. §§ 421, 422.  In contrast, NSOs are taxed much earlier – at the time of exercise – and at the employee's ordinary income tax rate upon exercise.  26 U.S.C. §83(a).

12.     To exercise an NSO, an employee is required to pay the tax to the company (as a form of withholding) before he or she can complete the exercise.  In the tech world and in this case, this tax is many times the strike price and can total hundreds of thousands of dollars, meaning that NSOs – unlike ISOs -- can impede an employee's ability to exercise the option depending on whether he or she has the financial resources to pay the tax.  Because ISOs are favored by prospective employees, they act as a prime recruiting tool for tech companies.  On the other hand, NSOs are more favorable to employers because the income generated by the employee upon exercise is treated as wages and is deductible on the company's income tax returns.  26 U.S.C. §83(h).

13.     The exercisability schedule for ISOs is pivotal to retaining their ISO treatment under the legal interpretation imposed by Uber.  This is because the Internal Revenue Code imposes a $100,000 limit on the total aggregate fair value of ISOs that are exercisable by an employee during any calendar year and deems the excess over $100,000 to be NSOs.  To "the extent that the aggregate fair market value of stock with respect to which [ISOs] . . . are exercisable for the 1st time by any individual during any calendar year . . . exceeds $100,000, such options shall be treated as [NSOs]."  26 U.S.C. §422(d) (hereafter the "Disqualification Threshold").

14.     Thus, if the ISOs are evenly exercisable over four years, the employee is guaranteed that the options will be treated as ISOs up to a maximum $400,000 (*i.e.,* $100,000 x

4 years).  On the other hand, if all of the ISOs are exercisable during one calendar year, Uber

deems only the first $100,000 as ISOs and the remainder as NSOs.

### Uber Promises ISOs to Recruit Employees

15.     To propel its spectacular ascent, Uber induced Plaintiff and hundreds of other

recruits to join Uber by promising them ISOs.  Uber did so to stay competitive with or gain

competitive advantage over its rival technology companies in the recruiting process.

16.     Upon hiring, Uber entered into a standardized written employment agreement

("Employment Agreement") in substantially identical or similar form with each employee.

Attached hereto as Exhibit A is a copy of this standardized Employment Agreement (here the

one entered into with Plaintiff), which is incorporated herein by reference.  The Employment

Agreement stated that "Subject to the approval of the Company's Board of Directors (the

"Board"), the Company *shall grant you a stock option* covering [stated number] shares of the

company's common stock (The Option")," and that "*the Option will be an incentive stock*

*option to the maximum extent allowed by the tax code*"  (emphasis added). The Employment

Agreement further specified a four-year vesting/exercisability schedule which <u>guaranteed</u> the

ISOs would receive maximum ISO treatment:

> "The Option shall vest and become *exercisable at the rate of 25% of the total*
> *number of option shares after the first 12 months of continuous service* and the
> remaining option shares shall become vested and *exercisable in equal monthly*
> *installments over the next three years of continuous service*." (emphasis added)

### Uber Post-Hire Systematically Imposes A New Exercisability
### Schedule Relegating Most of the ISOs to NSOs

17.     Months after starting work, Uber systematically gave each employee a

standardized Notice of Stock Option Grant (the "Notice") in substantially identical or similar

form.  Attached hereto as Exhibit B is a copy of this standardized Notice (here the one given to

Plaintiff), which is incorporated herein by reference. The Notice confirmed that the employee

had been granted the number of Incentive Stock Options promised in the Employment

Agreement, but further down contained a dramatically different exercisability clause: "**This**

**Option shall be exercisable in whole or in part six months after the Date of Grant.**"

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

18.   This new six-month exercisability schedule was directly contrary to the four-year exercisability schedule specified in the Employment Agreement, and had the effect of making all of the options exercisable during one calendar year, thereby resulting in Uber disqualifying all of the options above $100,000 from ISO treatment under the Disqualification Threshold.

19.   Uber was well aware that due to its imposition of an accelerated, six-month exercisability schedule, Uber would re-classify most of the promised ISOs as NSOs.

20.   Uber's unilateral imposition of an accelerated (six-month) exercisability schedule breached the Employment Agreement which set forth a four-year schedule.

21.   Uber further breached the Employment Agreement by thereafter refusing to permit the employees to exercise their options (in excess of $100,000) unless the employee paid the tax in conformance with NSO rules.   As a result of the added tax payment, many employees were financially unable or found it financially impracticable to exercise their options.

22.   On information and belief, Uber's above-described scheme to promise recruits ISOs to the maximum extent permitted by law and based on a maximum ISO-qualifying exercisability schedule in their Employment Agreement, knowing that Uber intended post-hire to impose an ISO-disqualifying exercisability schedule, began in or before 2013.  On information and belief, this scheme continued until the company began offering restricted stock units, rather than stock options, to recruits, which on information and belief occurred in or about December 2014 or early 2015.  Uber knew at the time of recruiting candidates and at the time of entering into the Employment Agreements that it never intended to honor the agreement to compensate employees with ISOs to the maximum extent permitted by the tax code or pursuant to the promised four-year exercisability schedule.  In or about May 2015, the manager of Uber's stock plan administration department told Plaintiff that Uber had been engaging in this practice of promising a four-year exercisability schedule in the Employment Agreements, and then systematically changing the exercisability schedule to six months in the Notices, since the very beginning.

**Uber's Financial Incentive To Deprive Employees of Their ISOs**

23.   Uber had substantial incentive to deprive employees of their ISOs, as follows:

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

a.      Because NSOs are treated as ordinary income, on information and belief, Uber receives a large payroll tax deduction, which it would otherwise not be entitled to had Uber not improperly imposed an ISO-disqualifying exercisability schedule different from the qualifying schedule contained in the Employment Agreements.  On information and belief, this reclassification of the options as NSOs has permitted Uber to take millions of dollars of tax deductions which it otherwise would not be entitled to take.

b.      Because of the significantly higher cost to exercise NSOs, many employees have been, and continue to be, financially unable or find it financially impracticable to exercise their stock options, or significant portions of them, due to the added burden of having to pay tax (often four or more times the amount of the exercise price) upon exercise.  As a result, many employees are effectively forced to forfeit this portion of their compensation.

c.      When an employee leaves Uber, he or she is required to exercise any vested options within 30 days, or they are forfeited. As a result, separating employees are often financially unable to come up with the additional monies to cover the taxes to exercise the vested options Uber deems to be NSOs, resulting in their forfeiture.  If the departure is due to termination for cause, Uber immediately cancels all unexercised vested options.  In both cases, unexercised vested options, while earned during the period of employment, are not realized by employees.  By converting equity compensation from the promised ISOs to NSOs, Uber has ensured that many employees will not receive their earned compensation when they leave the company and thereby Uber avoids having to pay millions of dollars in compensation.

### Uber's Improper "Trading Windows"

24.     As set forth above, Uber represented to recruits in their Employment Agreements that 25% of the promised stock options would be exercisable at the end of the first year of employment and the balance exercisable *pro rata* monthly over the next three years of employment.  Contrary to these promises and in further breach of the Employment Agreements (and even contrary to the improper six-month exercisability schedule set forth in the Notices), Uber limited the periods that employees could actually exercise their stock options based upon

internally-imposed "Trading Windows."  For example, employees were only allowed to exercise their stock options for less than a third of calendar 2015 and roughly half of calendar 2016.

25.     As a result, Uber employees have been denied the contractual right to exercise the options on the specified times under the Employment Agreements and even under the Notices.  These limited "Trading Windows" make it more difficult for employees to exercise and secure their promised equity compensation, and further ensure, as described above, that many employees will not receive their stock options when they leave the company.

**FACTS SPECIFIC TO PLAINTIFF**

26.     Plaintiff is a graduate of Carnegie-Mellon University, and subsequently attended and graduated from Stanford Law School.  Plaintiff is an experienced software engineer, who previously worked for Yelp.

27.     In or about mid-2014, Plaintiff was recruited for employment by Uber and another technology company and received offers from both.   Relying upon the above-described representations by Uber that it would be granting him 20,000 ISOs up to the maximum extent allowed by the tax code and the four-year vesting/exercisability schedule, Plaintiff made the decision to join Uber.

28.     On or about September 4, 2014, Plaintiff entered into an Employment Agreement with Uber (Exhibit A hereto).  The Employment Agreement promised that Plaintiff would receive 20,000 stock options, that they would be ISOs "to the maximum extent allowed by the tax code" and that an ISO-qualifying exercise schedule would apply, to wit: "[ t]he Option shall vest and become exercisable at the rate of 25% of the total number of option shares after the first 12 months of continuous service and the remaining option shares shall become vested and exercisable in equal monthly installments over the next three years of continuous service."

29.     Based on the foregoing representations, Plaintiff relocated his residence from the State of Washington to the Bay Area to work for Uber.

30.     More than two months after starting work, Uber gave Plaintiff the Notice of Stock Option Grant (Exhibit B hereto) granting him the promised number of options (20,000). The Notice on its face states that it is an "Incentive Stock Option."  According to the Notice, the

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

fair market value of Plaintiff's options when they were granted was $16.58/share, for a total fair market value (FMV) of 20,000 x $16.58 = $331,600 (the "Total Exercise Price").  According to the Employment Agreement, only 25% of these options – a FMV of $82,900 - should have been exercisable in any given calendar year, well below the annual Disqualification Threshold.  This would have assured that all of Plaintiff's options would be treated as ISOs.  However, as described above, the Notice contained a different and accelerated exercisability schedule, allowing the grantee to exercise all the options after six months (*i.e.,* during one calendar year), regardless of the vesting schedule.  Uber failed to state in the Notice that this was a material change from the Employment Agreement and that Uber's position was that most of the options would be disqualified from ISO treatment.

31.     In or about April 2015, months after the option grant was issued and after Plaintiff had relocated for work, Uber adopted an online stock administration system where it was first revealed to Plaintiff that Uber now actually considered most of the option grant to be NSOs.  Upon inquiry, Plaintiff was told by Uber's stock department that the accelerated exercisability schedule in his Notice had triggered the Disqualification Threshold for all options.  As a result, out of the 20,000 ISOs granted to Plaintiff, Uber deemed approximately 14,000 (70%) of those options to be NSOs.

32.     When Plaintiff first attempted in or about January 2016 to exercise the options that Uber claimed were now NSOs, Uber informed Plaintiff that he must immediately pay taxes on the exercise for Uber to recognize the exercise.  As a result of this tax payment requirement, it was financially impracticable for plaintiff to exercise all of his vested "NSO" options.

33.     Separate and apart from the foregoing, Uber refused to recognize several option exercises Plaintiff had made, asserting that the "Trading Window" was closed, even though Plaintiff was entitled to make this exercise under the schedule set forth in his Employment Agreement.

**CLASS ALLEGATIONS**

34.     Plaintiff brings this action as a class action under Rules 23(a), 23(b)(1), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Classes and SubClass of similarly situated persons:

**UBER INCENTIVE STOCK OPTION CLASS**: All current and former employees of Uber during the four years prior to the filing of this Complaint, who were promised ISOs for Uber stock in their Employment Agreements but some portion of whose options were deemed NSOs due to Uber imposing a shorter exercisability schedule in the Notice of Stock Option Grant than contained in the Employment Agreements.

**UBER TRADING WINDOW CLASS:** All current and former employees of Uber during the four years prior to the filing of this Complaint, who were prevented by Uber through the imposition of Trading Windows from exercising stock options for Uber stock in accordance with the timing of the exercisability schedule set forth in the Employment Agreements.

**RELOCATION SUBCLASS:**  All current and former members of the Uber Incentive Stock Option Class and/or Uber Trading Window Class who, during the four years prior to the filing of this Complaint, relocated their residence to work for Uber.  (References to "the Class" or "Class Members" refers to the forgoing and is inclusive of the "Subclass" and "Subclass Members.")

35.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes or Subclass may be expanded or narrowed by amendment or amended complaint.  Defendant, its subsidiaries, its officers, directors, managing agents and members of those persons' immediate families, the Court, Court personnel, and legal representatives, heirs, successors or assigns of any excluded person or entity are excluded from the Class.

36.     **Numerosity.**  The Class for whose benefit this action is brought is so numerous that joinder of all Class Members is impracticable.  While Plaintiff does not presently know the exact number of Class Members, Plaintiff is informed and believes that there are at least

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

hundreds of Class Members, and that those Class Members can be readily determined and identified through Defendant's files and, if necessary, appropriate discovery.

37.     **Typicality.**  Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff, like all Class Members, was a victim of Uber's breaches and misconduct alleged herein.  Furthermore, the factual bases of Defendant's breaches and misconduct are common to all Class Members and represent a common thread of unfair and/or unlawful conduct resulting in injury to all members of the Class.

38.     **Commonality.**  Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members.  Issues of law and fact common to the Class include:

(a)     Whether Defendant entered into written Employment Agreements which promised Class Members that they would be granted ISOs to the maximum extent permitted by tax law and under a four-year exercisability schedule specified in the Employment Agreements;

(b)     Whether Defendant breached the Employment Agreements by imposing an accelerated, shorter exercisability schedule than specified in the Employment Agreements, thereby causing many of the ISOs to be deemed NSOs by Uber;

(c)     Whether Defendant breached the Employment Agreements by imposing Trading Windows which prevented Class Members from exercising options at the times permitted under the Employment Agreements;

(d)     Whether Defendant's assertion that its interpretation of Internal Revenue Code Section 422, disqualifying all options in excess of $100,000 from ISO treatment including unvested options exercisable within one calendar year, is correct;

(e)     Whether, at or before the time Defendant entered into the Employment Agreements, it had adopted or decided to impose an accelerated exercisability schedule for stock options that was shorter than the four-year schedule set forth in the Employment Agreements;

(f)     Whether Defendant knowingly misrepresented the terms of the stock options in the Employment Agreements;

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

11
CLASS ACTION COMPLAINT

(g)     Whether Defendant made the promises concerning stock options set forth in the Employment Agreements without the intent to perform them;

(h)     Whether Defendant violated California Labor Code § 970 by misrepresenting the terms of stock options to be granted in order to induce the Relocation Subclass members to relocate to work for Uber;

(i)     Whether the Relocation Subclass Members relocated their residences to accept employment with Defendant;

(j)     Whether Class Members have been damaged by Defendant's actions or conduct;

(k)     Whether Class Members are entitled to specific performance of the Employment Agreements such that all options up to $400,000 receive ISO treatment;

(l)     Whether declaratory and injunctive relief are appropriate to curtail Defendant's conduct as alleged herein;

(m)     Whether Plaintiff and the other Class Members are entitled to restitution and disgorgement of all tax savings of Defendant as a result of Defendant's fraudulent, unfair and unlawful business practices to prevent Defendant from being unjustly enriched; and

(n)     Whether Defendant acted with fraud, malice and/or oppression, thereby justifying the imposition of punitive damages.

39.     **Adequacy.**  Plaintiff will fairly and adequately represent the interests of the Class and has no interests adverse to or in conflict with other Class Members.  Plaintiff's retained counsel will vigorously prosecute this case, has previously been designated class counsel in cases in the State and Federal courts of California, and is highly-experienced in employment law, class and complex, multi-party litigation.

40.     **Superiority.**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since, among other things, joinder of all Class Members is impracticable and a class action will reduce the risk of inconsistent adjudications or repeated litigation on the same conduct.  Further, the expense and burden of individual lawsuits would make it virtually impossible for Class Members, Defendant, or the Court to cost-

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

effectively redress separately the unlawful conduct alleged.  Thus, absent a class action, Defendant would unjustly retain the benefits of its wrongdoings.  Plaintiff knows of no difficulties to be encountered in the management of this action that would preclude its maintenance as a class action, either with or without sub-classes.

41.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records, or through notice by publication.

42.     Accordingly, class certification is appropriate under Rule 23.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (BREACH OF CONTRACT)

43.     Plaintiff incorporates herein by reference paragraphs 1-42 as if fully set forth herein.

44.     The Employment Agreement (in a form substantially identical or similar to Exhibit A) between Uber and each Class Member stated that Uber shall grant the employee a specified number of stock options, that the options will be ISOs to the maximum extent allowed by the tax code and shall vest and become exercisable over four-years, 25% at the end of the first year and *pro rata* monthly thereafter for the remaining three years, and that the specified number of options was subject to Board approval.

45.     Defendant's Board thereafter approved the number of options specified in the Employment Agreement for Plaintiff and each other Class Member.

46.     Plaintiff and the other Class Members have performed all obligations and conditions required by them in the Employment Agreements and/or are excused from doing so.

47.     Defendant breached the Employment Agreements by thereafter imposing a shorter (six-month) and ISO-disqualifying exercisability schedule on Plaintiff and the other Class Members, thereby causing all of the stock options (except for the first $100,000) to be treated by Defendant as NSOs rather than ISOs.

48.     Defendant further breached the Employment Agreements by prohibiting Plaintiff and the other Class Members from exercising the promised stock options on the schedule set

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

forth in the Employment Agreements (*i.e.,* 25% at the end of the first year and the remainder *pro rata* monthly over the next three years), improperly imposing internal "Trading Windows" that limited the exercisability periods.

49.     Based on Defendant's conduct described in this Complaint, Defendant also waived its right and/or is estopped to deny such obligations and breaches.

50.     As a result of the Defendant's breaches, Plaintiff and the other Class Members have suffered damages as a result of the re-classification of their stock options as NSOs and Defendant's refusal to permit Plaintiff and the Other Class Members to exercise their options on and after the dates set forth in their Employment Agreements.

51.     As a further result of Defendant's breaches, Plaintiff and the other Class Members are entitled to injunctive relief to remedy such unlawful continuing conduct, and to an order requiring that Defendant specifically perform the Employment Agreements by re-instating the agreed four-year exercisability schedule.

## SECOND CLAIM FOR RELIEF

(BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

52.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 51 as if fully set forth herein.

53.     The Employment Agreements contain an implied promise of good faith and fair dealing, whereby neither party will do anything to unfairly interfere with the right of the other party to receive the benefits of the contract.

54.     Plaintiff and the other Class Members have performed all obligations and conditions required by them in the Employment Agreements and/or are excused from doing so.

55.     Defendant breached the implied covenant of good faith and fair dealing by unfairly interfering with Plaintiff and the other Class Members' right to receive the benefits of the Employment Agreements.  Specifically, by unilaterally imposing after the fact an accelerated ISO-disqualifying exercisability schedule, Defendant has interfered with Plaintiff and the other Class Members' right to exercise their ISOs up to the maximum permitted by the tax code and pursuant to the ISO-maximizing four-year exercisability schedule specified in the Employment

Phillips, Erlewine, Given & Carlin, llp
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

Agreements.  Defendant has also unfairly imposed restrictive Trading Windows which improperly interfere with Plaintiff and the other Class Members' right to exercise their stock options on and after the dates specified in the Employment Agreements.

56.     Based on Defendant's conduct described in this Complaint, Defendant also waived its right and/or is estopped to deny such obligations and breaches.

57.     As a result of the Defendant's breaches, Plaintiff and the other Class Members have suffered damages as a result of the re-classification of their stock options as NSOs and Defendant's refusal to permit Plaintiff and the Other Class Members to exercise their options on and after the dates set forth in their Employment Agreements.

58.     As a further result of Defendant's breaches, Plaintiff and the other Class Members are entitled to injunctive relief to remedy such unlawful continuing conduct, and to an order requiring that Defendant specifically perform the Employment Agreements by re-instating the agreed four-year exercisability schedule.

## THIRD CLAIM FOR RELIEF

### (FALSE PROMISE)

59.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 42 as if fully set forth herein.

60.     Defendant promised to Plaintiff and the other Class Members in their Employment Agreements that: a) the stock options would be ISOs to the maximum extent permitted by the tax code and would be exercisable pursuant to an exercisability schedule (25% at the end of the first year of continuous service and 1/48 monthly thereafter for the following three years), which guaranteed that the options will be treated as ISOs up to a maximum $400,000 pursuant to Internal Revenue Code §422; and b) that the options could be exercised on and after those dates.

61.     These representations were material to Plaintiff and the other Class Members.

62.     Unbeknownst to Plaintiff and the other Class Members, Defendant never intended to perform these promises.  Rather, Defendant at all times intended to impose an accelerated, six-month exercisability schedule that Uber asserts had the effect of making all

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

stock options in excess of $100,000 NSOs instead of ISOs.  Also unbeknownst to Plaintiff and the other Class Members, Defendant at all times intended to impose restrictive "Trading Windows," which preclude the exercise of stock options on many of the dates permitted under the exercisability schedule specified in the Employment Agreements.

63.     Defendant intended that Plaintiff and the other Class Members rely on these promises in deciding to accept Defendant's employment offers.

64.     Plaintiff and the other Class Members reasonably relied upon Defendant's promises by accepting employment with Defendant.

65.     Defendant failed and refused to honor the foregoing promises, and in fact imposed an ISO-disqualifying exercisability schedule on Plaintiff and the other Class Members after they joined the company, whereby all but $100,000 of the stock options were deemed by Uber to be NSOs rather than ISOs.  Defendant further imposed Trading Windows which prevented Plaintiff and the other Class Members from exercising their options on many of the dates permitted in the exercisability schedules set forth in the Employment Agreements.

66.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the other Class Members suffered damages.

67.     As a further direct and proximate result of Defendant's wrongful conduct, Plaintiff and the other Class Members are entitled to injunctive relief to remedy such unlawful continuing conduct, and also to restitution and disgorgement of all tax savings by Defendant as a result of Defendant's fraudulent, unfair and unlawful business practices to prevent Defendant from being unjustly enriched.

68.     California Civil Code § 3294(a) provides, in pertinent part:

> In an action for the breach of an obligation not arising from Agreement,
> where it is proven by clear and convincing evidence that the defendant
> has been guilty of oppression, fraud, or malice, the plaintiff, in addition to
> the actual damages, may recover damages for the sake of example and by
> way of punishing the defendant.

69.     Defendant acted with fraud, malice and/or oppression in carrying out the above-described scheme.  Defendant fraudulently sought to avoid paying Plaintiff and the other Class Members millions of dollars in promised compensation and, upon information and belief, also took millions of dollars in otherwise unwarranted tax deductions by re-characterizing the ISOs as NSOs.  Plaintiff and the other Class Members are therefore entitled to punitive damages against Defendant.

## FOURTH CLAIM FOR RELIEF

### (INTENTIONAL MISREPRESENTATION)

70.     Plaintiff incorporates by reference the allegations in paragraphs 1-42 as if fully set forth herein.

71.     Defendant represented to Plaintiff and the other Class Members in their Employment Agreements that the stock options were ISOs to the maximum extent permitted by the tax code and that they were exercisable 25% at the end of the first year of continuous service and 1/48 monthly thereafter for the following three years.  These representations guaranteed to Plaintiff and the other Class Member that the options would be treated as ISOs up to a maximum $400,000 and that the stock options could be exercised on and after the dates set forth in that schedule.  As such, they were important and material to Plaintiff and the Class Members.

72.     These representations were false.  In fact, the options they issued were not ISOs to the maximum extent permitted by the tax code given they were not exercisable on the schedule represented by Defendant.

73.     Defendant knew that the representations were false when it made them and/or Defendant made such representations recklessly and without regard for their truth.  Upon information and belief, in or before 2013 Defendant had decided to, and thereafter systematically used, an accelerated exercisability schedule in the Notices which according to Uber rendered the options (beyond $100,000) NSOs.

74.     Defendant intended that Plaintiff and the other Class Members rely upon these representations by accepting Defendant's employment offers.

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

17

75.     Plaintiff and the Class Members reasonably relied on Defendant's representations by accepting Defendant's employment offers.

76.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the other Class Members suffered damages.

77.     As a further direct and proximate result of Defendant's wrongful conduct, Plaintiff and the other Class Members are entitled to injunctive relief to remedy such unlawful continuing conduct, and also to restitution and disgorgement of all tax savings by Defendant as a result of Defendant's fraudulent, unfair and unlawful business practices to prevent Defendant from being unjustly enriched.

78.     California Civil Code § 3294(a) provides additionally, in pertinent part, as follows:

> In an action for the breach of an obligation not arising from Agreement, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

79.     Defendant acted with fraud, malice and/or oppression in carrying out the above-described scheme.  Defendant fraudulently sought to avoid paying Plaintiff and the other Class Members millions of dollars in promised compensation and, upon information and belief, also took millions of dollars in otherwise unwarranted tax deductions by re-characterizing the ISOs as NSOs.  Plaintiff and the Class Members are therefore entitled to punitive damages against Defendant.

## FIFTH CLAIM FOR RELIEF

### (VIOLATION OF CAL. LABOR CODE § 970)

80.     Plaintiff incorporates by reference the allegations in paragraphs 1-42, 60-65 and 71-75 as if fully set forth herein.

81.     California Labor Code § 970 provides, in pertinent part: "No person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change from one place to another in this State or from any place outside to any place within the State, or

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

from any place within the State to any place outside, for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning . . .  (b) The length of time such work will last, or the compensation therefor."

82.     Defendant used knowingly false representations contained in the Employment Agreements to influence, persuade or engage Plaintiff and other Relocation Subclass Members to accept employment with Defendant and thereby change from one place to another in the State of California or from any place outside to any place within the State of California or from any place inside the State of California to any place outside.

83.     Specifically, Defendant represented to Plaintiff and the Relocation Subclass Members in their Employment Agreements that the stock options would be ISOs up to the maximum extent allowed by the tax code, would be exercisable pursuant to a four-year schedule which guaranteed that the options will be treated as ISOs up to a maximum $400,000 and that the options would be exercisable on and after the dates specified in such schedule.  Defendant made such representations to Plaintiff and the Relocation Subclass Members without the intent to perform them.

84.     Plaintiff and the Relocation Subclass Members justifiably relied upon such misrepresentations by relocating their residences to accept employment with Uber.

85.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the other Class Members suffered damages.

86.     California Labor Code §972 provides that:  "In addition to such criminal penalty, any person, or agent or officer thereof who violates any provision of section 970 is liable to the party aggrieved, in a civil action, for double damages resulting from such misrepresentations." Plaintiff and other Relocation Subclass Members are therefore entitled to double damages resulting from such misrepresentations.

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

**SIXTH CLAIM FOR RELIEF**

(VIOLATION OF UCL)

Cal. Bus. & Prof. Code §§ 17200 *et seq.*

87.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 86 as if fully set forth herein.

88.     By its fraudulent representations and breaches described in this Complaint, Defendant has committed unfair, unlawful and/or fraudulent business practices in violation of California Business & Professions Code § 17200 *et seq.* (the "UCL").

89.     These misrepresentations and breaches constitute unfair, unlawful and fraudulent conduct and unfair competition in violation of the UCL.

90.     Defendant's conduct as described herein has been anti-competitive and injurious to other companies which complied with the laws and policies violated by Defendant as Defendant's conduct provided an unfair and illegal advantage in the marketplace as a result of, *inter alia*, inducing individuals to accept employment with Defendant rather than other technology companies.

91.     The foregoing conduct by Defendant has injured Plaintiff and the other Class Members by, *inter alia*, wrongfully denying them the financial advantages of ISOs and precluding them from exercising their stock options at the promised times.  As such, Plaintiff and the other Class Members are entitled to restitution and injunctive relief.  Plaintiff and the other Class Members are also entitled to restitution and disgorgement of all tax savings by Defendant as a result of Defendant's fraudulent, unfair and unlawful business practices to prevent Defendant from being unjustly enriched.

92.     Wherefore, Plaintiff prays for relief and judgment as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the other putative Class Members, prays for judgment in his favor and relief against Defendant as follows:

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA 94129
(415) 398-0900

(a)    An order certifying the proposed Classes and SubClass, designating Plaintiff as the named representative of the Classes and SubClass, and designating Plaintiff's counsel as Class Counsel;

(b)    For compensatory damages in an amount to be determined at trial, but at least $5 million;

(c)    For double damages to Plaintiff and the other Relocation Subclass Members pursuant to Labor Code §972;

(d)    For restitution of all amounts Class Members have been unlawfully denied as a result of Defendant's unfair and unlawful business practices;

(e)    For restitution and disgorgement of all tax savings by Defendant as a result of Defendant's unfair and unlawful business practices to prevent Defendant from being unjustly enriched;

(f)    For specific performance;

(g)    For injunctive relief restraining further acts of wrongdoing by Defendant;

(h)    For punitive and exemplary damages;

(i)    For pre-judgment interest, at the legal rate;

(j)    For attorneys' fees and costs; and

(k)    For all such other and further relief as the Court may deem just, proper and equitable.

Dated: December 19, 2016    PHLLIPS, ERLEWINE, GIVEN & CARLIN LLP

By: /s/ R. Scott Erlewine
R. Scott Erlewine
Nicholas A. Carlin
Brian S. Conlon
Attorneys for Plaintiff
Lenza H. McElrath III

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff hereby requests a trial by jury of all issues so triable.

3

Dated: December 19, 2016          PHLLIPS, ERLEWINE, GIVEN & CARLIN LLP

4

5

By: _/s/ R. Scott Erlewine_____

6

R. Scott Erlewine

Nicholas A. Carlin

7

Brian S. Conlon

Attorneys for Plaintiff

8

Lenza H. McElrath III

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

22

CLASS ACTION COMPLAINT