COOLEY LLP
PATRICK E. GIBBS (183174) (pgibbs@cooley.com)
WENDY J. BRENNER (198608) (brennerwj@cooley.com)
ALLISON S. DAVIDSON (267964) (adavidson@cooley.com)
MICHELLE TON (300942) (mton@cooley.com)
ADDISON LITTON (305374) (alitton@cooley.com)
3175 Hanover Street Palo Alto, CA 94304-1130
Telephone:    (650) 843-5000
Facsimile:    (650) 849-7400

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENZA H. MCELRATH III, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 3:16-cv-07241-JSC<br><br>**DEFENDANT UBER TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS AND STAY CLASS CLAIMS, OR IN THE ALTERNATIVE, STAY ENTIRE PROCEEDING; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS AND STAY CLASS CLAIMS, OR IN THE ALTERNATIVE, STAY ENTIRE PROCEEDING**<br><br>**DATE: MARCH 23, 2017**<br>**TIME: 9:00 A.M.**<br>**DEPT.: F, 15TH FLOOR** |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | RELEVANT FACTUAL AND PROCEDURAL HISTORY | 4 |
| | A. The Uber App Connects Riders to Transportation Providers Across the U.S. | 4 |
| | B. McElrath Executed the Employment Agreement with Uber and Agreed to Arbitrate His Claims on an Individual Basis. | 5 |
| | C. McElrath Filed a State Action Concerning Claims Covered by the Arbitration Agreement and Refused to Arbitrate. | 7 |
| | D. McElrath Filed a Class Action in This Court Asserting Similar Arbitrable Claims from the State Action. | 8 |
| III. | ARGUMENT | 8 |
| | A. The Court Should Order McElrath to Arbitrate His Individual Claims and Stay the Class Proceedings Until Resolution of the Arbitration. | 8 |
| |    1. The Arbitration Agreement Is Valid and Enforceable. | 8 |
| |       a. The Parties Have a Valid Agreement to Arbitrate. | 9 |
| |          (1) The Arbitration Agreement Provides for a Neutral Arbitrator. | 10 |
| |          (2) The Arbitration Agreement Provides for Appropriate Discovery Mechanisms. | 10 |
| |          (3) The Arbitration Agreement Provides for a Written Award. | 10 |
| |          (4) The Arbitration Agreement Provides for the Same Relief Otherwise Available in Court. | 11 |
| |          (5) Uber Has Agreed to Pay Arbitration Costs. | 11 |
| |       b. The Arbitration Agreement Encompasses This Dispute. | 11 |
| |    2. Compelling Arbitration of McElrath's Individual Claims Does Not Conflict with Morris Because the Class Waiver Is Severable from the Arbitration Agreement. | 12 |
| |    3. The FAA Requires a Stay of Class Claims Until Resolution of McElrath's Individual Arbitration. | 14 |
| | B. Alternatively, the Court Should Stay the Entire Proceeding Pending the Supreme Court's Decision in Morris. | 16 |
| IV. | CONCLUSION | 18 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.,*
  24 Cal. 4th 83 (2000) ............................................................................................ *passim*

*Bencharsky v. Cottman Transmission Sys., LLC,*
  625 F. Supp. 2d 872 (N.D. Cal. 2008) ........................................................................12

*Cellular Sales of Missouri, LLC v. Nat'l Labor Relations Bd.,*
  824 F.3d 772 (8th Cir. 2016)...........................................................................3, 16, 17

*China Union Lines, Ltd. v. American Marine Underwriters, Inc.,*
  458 F. Supp. 132 (S.D.N.Y. 1978)..............................................................................15

*Chiron Corp. v. Ortho Diagnostic Sys. Inc.,*
  207 F.3d 1126 (9th Cir. 2000)......................................................................................9

*CMAX, Inc. v. Hall,*
  300 F.2d 265 (9th Cir. 1962)......................................................................................16

*Coast Plaza Doctors Hosp. v. Blue Cross of California,*
  83 Cal. App. 4th 677 (2000).......................................................................................12

*Cox v. Ocean View Hotel Corp.,*
  533 F.3d 1114 (9th Cir. 2008).......................................................................................9

*D.R. Horton, Inc. v. N.L.R.B.,*
  737 F.3d 344 (5th Cir. 2013)...........................................................................4, 16, 17

*Davis v. O'Melveny & Myers,*
  485 F.3d 1066 (9th Cir. 2007)............................................................................9, 13, 14

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.,*
  498 F.3d 1059 (9th Cir. 2007)....................................................................................16

*EFund Capital Partners v. Pless,*
  150 Cal. App. 4th 1311 (2007)...................................................................................12

*Ernst & Young LLP v. Morris,*
  No. 16-300 (U.S. Jan. 13, 2017) ..................................................................................3

*First Options of Chicago, Inc. v. Kaplan,*
  514 U.S. 938 (1995)......................................................................................................9

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF AUTHORITIES (CON'T)

Page(s)

*Galvan v. Michael Kors USA Holdings, Inc.*,
No. CV1607379BROAFMX, 2017 WL 253985 (C.D. Cal. Jan. 19, 2017) .........................12, 13

*Gerton v. Fortiss, LLC*,
No. 15-CV-04805-TEH, 2016 WL 613011 (N.D. Cal. Feb. 16, 2016) ....................3, 12, 13, 14

*Gilmore v. Shearson/Am. Exp. Inc.*,
668 F. Supp. 314 (S.D.N.Y. 1987)...........................................................................................15

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)..................................................................................................................16

*Larroque v. First Advantage Lns Screening Sols., Inc.*,
No. 15-CV-04684-JSC, 2016 WL 39787 (N.D. Cal. Jan. 4, 2016) ...............................4, 16, 17

*Lewis v. Epic Sys. Corp.*,
823 F.3d 1147 (7th Cir. 2016), *cert. granted*, No. 16-285, 2017 WL 125664
(U.S. Jan. 13, 2017)....................................................................................................................4

*Leyva v. Certified Grocers of Cal., Ltd.*,
593 F.2d 857 (9th Cir. 1979)....................................................................................................16

*Morris v. Ernst & Young, LLP*,
834 F.3d 975 (9th Cir. 2016), *cert. granted* (U.S. Jan. 13, 2017).................................... *passim*

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*,
55 Cal. 4th 223 (2012) ...............................................................................................................9

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*,
388 U.S. 395 (1967)..................................................................................................................15

*Ramirez v. Trans Union, LLC*,
2015 WL 6159942 (N.D. Cal. June 22, 2015) ....................................................................16, 17

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) ...................................................................................................................13

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S 220 (1987).....................................................................................................................2

*Shepardson v. Adecco USA, Inc.*,
No. 15-CV-05102-EMC, 2016 WL 1322994 (N.D. Cal. Apr. 5, 2016) ...................................15

*Stolt-Nielsen S.A. v. Animal Feeds Int'l. Corp.*,
559 U.S. 662 (2010) ..........................................................................................................3, 12, 13

iii.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES (CON'T)**

Page(s)

*Sutherland v. Ernst & Young LLP,*
    726 F.3d 290 (2d Cir. 2013)................................................................4, 16, 17

*Whitworth v. Solarcity Corp.,*
    No. 16-CV-01540-JSC, 2016 WL 6778662 (N.D. Cal. Nov. 16, 2016)........................3, 12, 13

*Yahoo! Inc. v. Iversen,*
    836 F. Supp. 2d 1007 (N.D. Cal. 2011) ................................................................8

**Statutes**

Federal Arbitration Act

    9 U.S.C. § 1 *et seq.*................................................................................2

    9 U.S.C. § 2 ................................................................................8

    9 U.S.C. § 3 ................................................................................3, 15

National Labor Relations Act................................................................2, 4, 12

Private Attorney General Act................................................................7, 8

California Business & Professions Code § 17200 *et seq.* ................................................8

California Labor Code § 970 ................................................................8

**Other Authority**

American Arbitration Association Employment Arbitration Rules and Mediation
    Procedures ................................................................6, 7, 10, 11

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

## NOTICE OF MOTION AND MOTION

## TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 23, 2017 at 9:00 a.m. (or as soon thereafter as the matter may be heard) in Courtroom F, 15th Floor, of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Court will hear: (1) Defendant Uber Technologies, Inc.'s ("Uber") motion to compel plaintiff Lenza McElrath III to arbitrate his claims individually and stay the class claims; or, alternatively, (2) Uber's motion for an order staying this entire action pending the United States Supreme Court's review of the Ninth Circuit's decision in *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted* (U.S. Jan. 13, 2017).[1]

The foregoing motions are based on this notice of motions, the accompanying memorandum of points and authorities, the declarations of Wendy Brenner and Andrew Wegley filed concurrently herewith, all pleadings on file in this action, and on such further written or oral argument as may be permitted by this Court.

## STATEMENT OF RELIEF SOUGHT

Uber respectfully requests the Court to grant its motion to compel arbitration of McElrath's individual claims and stay the class claims pending the resolution of the arbitration. In the alternative, Uber requests an order staying the entire proceeding until the Supreme Court issues a decision in *Morris*.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On September 3, 2014, McElrath entered into a valid and enforceable arbitration agreement with Uber (the "Arbitration Agreement"), requiring that *any* claims arising out of his employment with Uber, including those related to equity, be submitted to binding arbitration. The Arbitration Agreement between McElrath and Uber, which is expressly governed by the

---

[1] Should the Court grant Uber's motion to compel arbitration and stay the class claims, Uber reserves the right to move to dismiss the class claims in their entirety if the Supreme Court overturns the Ninth Circuit's *Morris* decision.

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), contains a severable provision requiring him to arbitrate any claims against Uber on an individual basis only. The claims that McElrath seeks to assert in this lawsuit plainly arise out of his employment agreement with Uber, and therefore are within the scope of the parties' Arbitration Agreement. As such, McElrath's attempt to assert those claims in court (for the second time) is in violation of his agreement to arbitrate any such claims. Accordingly, the Court should compel arbitration of McElrath's individual claims and stay the class claims for the following reasons:

**First, the Arbitration Agreement is valid and should be enforced in accordance with the FAA's strong policy favoring arbitration.** Under basic contract principles, McElrath agreed to arbitrate the asserted employment-related claims, and the contract is not unconscionable because it satisfies the requirements set forth in *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal. 4th 83 (2000). Further, the claims asserted in the Complaint fall within the scope of the Arbitration Agreement: in essence, McElrath complains that, in granting him the 20,000 stock options he was promised in his employment agreement, Uber allowed McElrath to exercise his options on a shorter schedule than the one set forth in his employment agreement (something many employees would and did welcome), and that this early exercise schedule meant that some of his stock options were deemed to be "nonqualified stock options" (or NSOs) rather than "incentive stock options" (or ISOs). (*See* Compl. ¶¶ 28-32.) There can be no question that McElrath is asserting claims "arising out of" and "related to" his employment with Uber, and therefore such claims are within the scope of the parties' Arbitration Agreement. Accordingly, the FAA requires the Court to "rigorously enforce" the Arbitration Agreement. *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S 220, 226 (1987) (citation omitted).

**Second, Uber's request does not conflict with the Ninth Circuit's decision in *Morris* because the class action waiver is severable from the Arbitration Agreement, thus allowing McElrath's *individual* claims to proceed in arbitration.** In *Morris*, the Ninth Circuit held that a mandatory class action waiver in an arbitration agreement was unenforceable because it violated the complaining employees' right to pursue concerted work-related claims under the National Labor Relations Act ("NLRA"). *Morris*, 834 F.3d at 990. Notably, however, the Ninth Circuit

2.

did not hold that an unenforceable class action waiver contained in an arbitration agreement automatically rendered the rest of that agreement invalid. Instead, the Ninth Circuit suggested that an arbitration agreement may still be enforceable if the class action waiver is severable from the agreement. *See id.* (remanding case to district court to determine whether the class action waiver was "severable" from the contract). That position is consistent with the approach taken by courts in this district before *Morris. See, e.g., Gerton v. Fortiss, LLC*, No. 15-CV-04805-TEH, 2016 WL 613011, at *6, 9 (N.D. Cal. Feb. 16, 2016) (severing class waiver and compelling arbitration of plaintiff's claims). Because the class action waiver provision in McElrath's Arbitration Agreement with Uber is severable, the rest of the Arbitration Agreement – which governs arbitration of McElrath's *individual* claims – remains enforceable, requiring the Court to compel arbitration of McElrath's individual claims. Once McElrath's individual claims are compelled to arbitration, the remaining class claims in this action must be stayed until resolution of the arbitration under Section 3 of the FAA. 9 U.S.C. § 3.[2]

Even if the FAA did not compel the Court to stay the class action – which it does – and even if this Court were to deny Uber's motion compel arbitration – which it should not – the case should be stayed pending the Supreme Court's review of the Ninth Circuit's decision in *Morris*, which was recently added to the Supreme Court's docket to be heard in the coming term. *See* Order, *Ernst & Young LLP v. Morris*, No. 16-300 (U.S. Jan. 13, 2017) (granting petitioner's writ of *certiorari*); Order, *Ernst & Young LLP v. Morris*, No. 16-300 (U.S. Jan. 25, 2017) (setting briefing schedule). In that case, the Supreme Court will resolve a circuit split between the Seventh and Ninth Circuits, on the one hand, and the Second, Fifth, and Eighth Circuits, on the other. Consistent with Circuit Judge Ikuta's dissent in *Morris*, the Second, Fifth, and Eighth Circuits, have each rejected the approach taken by the Seventh and Ninth Circuits. *See Morris*, 834 F.3d at 998 (Ikuta, J., dissenting); *Cellular Sales of Missouri, LLC v. Nat'l Labor Relations*

---

[2] To be clear, Uber is not seeking class arbitration, nor does the law allow that result. As this Court recognized, "[a] court cannot compel arbitration of class claims where the parties did not contract to submit to class-wide arbitration." *Whitworth v. Solarcity Corp.*, No. 16-CV-01540-JSC, 2016 WL 6778662, at *4 (N.D. Cal. Nov. 16, 2016) (Corley, J.) (citing *Stolt-Nielsen S.A. v. Animal Feeds Int'l. Corp.*, 559 U.S. 662, 684 (2010)). Here, as in *SolarCity*, the parties did not agree to class-wide arbitration.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Bd.*, 824 F.3d 772 (8th Cir. 2016); *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344 (5th Cir. 2013); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013). In those decisions, the courts held generally that class waivers – like the one in McElrath's Employment Agreement – do not violate the NLRA. *See id.* The Ninth and Seventh Circuits have reached the opposite conclusion. *See Morris*, 834 F.3d at 990; *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147 (7th Cir. 2016), *cert. granted*, No. 16-285, 2017 WL 125664 (U.S. Jan. 13, 2017)

As this Court has previously held, stays are appropriate where the parties face needlessly proceeding with litigating a "large putative class action – engaging in expansive discovery and possible class certification briefing – that may be rendered moot and unnecessary" by a pending Supreme Court decision. *Larroque v. First Advantage Lns Screening Sols., Inc.*, No. 15-CV-04684-JSC, 2016 WL 39787, at *2 (N.D. Cal. Jan. 4, 2016) (Corley, J.). That is precisely the case here. The parties face the prospect of engaging in extensive and costly discovery and complex motion practice that will burden both the parties and the Court despite the distinct possibility – and Uber would submit likelihood – that the Supreme Court's decision in *Morris* will render this activity moot and unnecessary if it concludes that *Morris* was wrongly decided.

Given this circuit split, and the Supreme Court's grant of *certiorari* and calendaring of the case for hearing this term, Uber submits that a stay is warranted here. Staying the case now will avoid the needless and expensive litigation attendant with litigating a class action and will allow the Court the benefit of applying the Supreme Court's decision in *Morris*.

## II.   RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A.   The Uber App Connects Riders to Transportation Providers Across the U.S.

Uber is a Delaware corporation headquartered in San Francisco, California. (Compl. ¶ 5.) Uber offers a mobile smartphone application to connect riders looking for transportation to independent transportation providers looking for riders (the "Uber App"). (Declaration of Andrew Wegley submitted herewith ("Wegley Decl."), ¶ 2.) Uber furnishes the Uber App to riders and independent transportation providers as a tool to facilitate transportation services. (*Id.*) The Uber App is available in over 100 cities across the country. (*Id.* ¶ 3.) The Uber App gives riders the flexibility to travel almost anywhere they desire, including from one state to another.

(*Id.* ¶ 4.)

**B.    McElrath Executed the Employment Agreement with Uber and Agreed to Arbitrate His Claims on an Individual Basis.**

On September 29, 2014, McElrath started working as a software engineer[3] at Uber's San Francisco office.   (*Id.* ¶ 7; Compl. ¶ 28.) On September 3, 2014, McElrath executed an employment agreement (the "Employment Agreement").   (Wegley Decl. ¶ 6, Ex. A.)   The Employment Agreement contains a choice of law provision requiring it to "be interpreted in accordance with the laws of the State of California without giving effect to provisions governing the choice of law." (*Id.* ¶ 6, Ex. A, ¶ 8(e).)   In addition, the Employment Agreement requires McElrath to arbitrate his employment-related claims.

The arbitration provisions are set forth in paragraph 8(f) of the Employment Agreement, in bold text titled "**Arbitration**," and in the Dispute Resolution Agreement, which is Attachment B to the Employment Agreement (collectively, the "Arbitration Agreement").   (*Id.* ¶ 6, Ex. A, ¶ 8(f); *id.*, ¶ 6, Ex. A, Attachment B.)   Paragraph 8(f) states:

> **As set forth in more detail in the Alternate Dispute Resolution Agreement (attached hereto as Attachment B), You and the company agree to submit to mandatory binding arbitration any and all claims arising out of or related to your employment with the Company and your termination thereof,** including but not limited to, claims for unpaid wages, wrongful terminations, torts, **stock or stock options or other ownership interest in the Company** and/or discrimination (including harassment) based upon any federal, state or local ordinance, statute, regulation or constitutional provision, except that each party may, at its, his or her option, seek injunctive relief in court related to the improper use, disclosure or misappropriation of a party's proprietary, confidential or trade secret information. All arbitration hearings shall be conducted in San Francisco County, California. THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY JURY IN REGARD TO SUCH CLAIMS. This Agreement does not restrict your right to file administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict the employee's ability to file such claims (including, but not limited to, the National Labor Relations Board, the Equal Employment Opportunity Commission and the Department of Labor).

[3] McElrath's full job title is "Software Engineer, Backend (Marketplace Platform)." (Wegley Decl. ¶ 7, Ex. B.)

5.

(*Id.* ¶ 6, Ex. A, ¶ 8(f) (emphasis added).)

As noted in paragraph 8(f), the Dispute Resolution Agreement provides additional information about the parties' agreement to arbitrate. The Dispute Resolution Agreement is broken into four subsections describing aspects of the dispute resolution process that employees are agreeing to. The first subsection provides that the Dispute Resolution Agreement is governed by the FAA and that disputes arising out of or related to an employee's employment with Uber are to be resolved in final and binding arbitration:

> This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. This Agreement applies to any dispute arising out of or related to Employee's employment with Uber Technologies, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment and survives after the employment relationship terminates. Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.

(*Id.* ¶ 6, Ex. A, Attachment B, ¶ 1.)

The second subsection provides guidelines for conducting arbitration proceedings. It states that disputes are to be resolved in arbitration in accordance with the American Arbitration Association's ("AAA") rules and instructs McElrath to access the AAA's rules via the AAA's web address, "www.adr.org," or to ask Human Resources for a copy. (*Id.* ¶ 6, Ex. A, Attachment B, ¶ 2.)  In addition, the second subsection sets forth the following procedures (which are consistent with the AAA's rules): (1) the parties have "the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator"; (2) the arbitrator "will issue a decision or award in writing, stating the essential findings of fact and conclusions of law"; (3) the arbitrator will offer the same relief that a party is "entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator that would otherwise be available in court"; and (4) the company will pay the fees for

6.

the arbitrator and the arbitration as required by law. (*Compare id.* ¶ 6, Ex. A, Attachment B, ¶ 2 (emphasis added) *with* Declaration of Wendy Brenner submitted herewith ("Brenner Decl."), ¶ 3, Ex. A, (AAA Employment Arbitration Rules and Mediation Procedures).)

The third subsection alerts the parties of the class-waiver provision, in underlined text: "You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative basis." (Wegley Decl. ¶ 6, Ex. A, Attachment B, ¶ 3.) It further clarifies that, pursuant to this class action waiver, a party has "no right or authority for any dispute to be brought, heard or arbitrated as a class, collective, representative or private attorney general action, or as a member in any purported class, collective, representative or private attorney general proceeding, including without limitation pending but not certified class actions." (*Id.*)

The last subsection confirms that the Dispute Resolution Agreement "is the full and complete agreement relating to the formal resolution of employment-related disputes." (*Id.* ¶ 6, Ex. A, Attachment B, ¶ 4.) Notably, the agreement states that "in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable." (*Id.*) Further, it provides that the parties agree that the agreement is "silent as to any party's ability to bring a class, collective or representative action in arbitration" in the event that the class waiver is deemed to be unenforceable. (*Id.*)

C.    **McElrath Filed a State Action Concerning Claims Covered by the Arbitration Agreement and Refused to Arbitrate.**

In May 2016, McElrath filed a complaint in San Francisco Superior Court asserting claims covered by the Arbitration Agreement, including breach of contract and misrepresentation, arising from the same set of facts alleged in this case – that McElrath received a different type of stock option and exercise timeline than what was allegedly set forth in his employment agreement. *See* Complaint, *McElrath III v. Uber Techs., Inc.*, No. CGC-16-551748 (Cal. Super. Ct., San Francisco Cnty., May 2, 2016). One day before the scheduled hearing on Uber's motion to compel arbitration of McElrath's claims, McElrath unilaterally amended his complaint to remove all claims covered by the Arbitration Agreement, leaving only a cause of action under the Private

7.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Attorney General Act ("PAGA"). *See* Amended Complaint, *McElrath III v. Uber Techs., Inc.*, No. CGC-16-551748 (Cal. Super. Ct., San Francisco Cnty., July 13, 2016). McElrath's PAGA claim was premised on Uber's alleged violations of three California Labor Code sections. (*Id.*) On December 9, 2016, the state court sustained Uber's demurrer as to two of the three violations.[4]

### D. McElrath Filed a Class Action in This Court Asserting Similar Arbitrable Claims from the State Action.

McElrath responded to the state court's order largely sustaining Uber's demurrer by filing an overlapping, duplicative class action against Uber in the United States District Court, Northern District of California, asserting nearly identical claims from McElrath's original complaint filed in the state action: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) false promise, (4) intentional misrepresentation, (5) violation of California Labor Code Section 970, and (6) violation of California's unfair competition law (California Business & Professions Code Section 17200 *et seq.*). (Compl. ¶¶ 43-91.)

## III. ARGUMENT

### A. The Court Should Order McElrath to Arbitrate His Individual Claims and Stay the Class Proceedings Until Resolution of the Arbitration.

McElrath filed the instant class action concerning claims arising from his employment, which are covered by the Arbitration Agreement and governed by the FAA. *See* 9 U.S.C. § 2; *Yahoo! Inc. v. Iversen*, 836 F. Supp. 2d 1007, 1009 (N.D. Cal. 2011) ("The FAA applies to any contract affecting interstate commerce, including employment agreements."). Accordingly, he should be compelled to arbitrate his individual claims because: (1) the Arbitration Agreement is valid and enforceable; (2) the class waiver is severable from the Arbitration Agreement; and (3) the FAA compels a stay of the proceedings pending McElrath's arbitration.

#### 1. The Arbitration Agreement Is Valid and Enforceable.

In deciding a motion to compel arbitration, a district court's inquiry is two-fold. The court

---

[4] On February 6, 2017, the state court granted the parties' request to stay the action pending the entry of final judgment in this Court (not including any appeal), or further order of the state court. Order, *McElrath III v. Uber Techs., Inc.*, No. CGC-16-551748 (Cal. Super. Ct., San Francisco Cnty., Feb. 6, 2017).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

decides "(1) whether a valid agreement to arbitrate exists; and if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Here, both criteria are met.

### a.    The Parties Have a Valid Agreement to Arbitrate.

General principles of contract law determine whether the parties have entered into a binding agreement to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Thus, to assess the validity of an arbitration clause, federal courts sitting in diversity turn to the substantive state law in which it sits. In this case, California state law applies.

"Under California law, a contractual clause is unenforceable if it is both procedurally and substantively unconscionable." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) (citing *Armendariz*, 24 Cal. 4th at 99). Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power;" substantive unconscionability focuses on "overly harsh or one-sided results." *Armendariz*, 24 Cal. 4th at 114 (internal quotation marks and citations omitted). Both elements must be present, but courts employ a "sliding scale," whereby a stronger showing on one may make up for a weaker showing on the other. *Id.* (citation omitted). McElrath, as the party resisting arbitration, bears the burden of proving unconscionability. *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012).

In *Armendariz*, the court held that mandatory arbitration provisions in employment agreements concerning employment claims are fully enforceable if the arbitration proceedings meet the following criteria: (1) a neutral arbitrator; (2) appropriate discovery mechanisms; (3) a written award; (4) the availability of the same relief that would otherwise be available in court; and (5) the employer's payment of arbitration costs beyond what the employee would incur in a court action. *Armendariz*, 24 Cal. 4th at 103-12. The Arbitration Agreement here meets each of these requirements.

**(1)    The Arbitration Agreement Provides for a Neutral Arbitrator.**

The Arbitration Agreement provides that disputes covered by the agreement are to be resolved in arbitration in accordance with the American Arbitration Association's ("AAA") rules. (Wegley Decl., ¶ 6, Ex. A, Attachment B, ¶ 2 (providing web address to the AAA rules).)  The AAA Employment Arbitration Rules and Mediation Procedures (the "AAA Rules") govern binding arbitrations of employment-related disputes, and parties are deemed to have incorporated the rules into their arbitration agreement if they have provided for arbitration by the AAA. (Brenner Decl., ¶ 3, Ex. A, Rule 1.)  Here, Rule 12 of the AAA Rules addresses guidelines for the qualifications and appointment of neutral arbitrators.  (*Id.*, ¶ 3, Ex. A, Rule 12.)  In addition, the AAA's National Roster of Arbitrators and Mediators provides lists of available neutral arbitrators. (*Id.*, ¶ 3, Ex. A, Rule 12(b)(iii).)  Thus, the Arbitration Agreement meets the first *Armendariz* requirement.

**(2)    The Arbitration Agreement Provides for Appropriate Discovery Mechanisms.**

The Arbitration Agreement allows parties "the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator." (Wegley Decl., ¶ 6, Ex. A, ¶ Attachment B, ¶ 2.)  Furthermore, Rule 9 of the AAA Rules allows the arbitrator to order discovery to the extent "necessary to a full and fair exploration of the issues in dispute." (Brenner Decl., ¶ 3, Ex. A, Rule 9.)  Thus, the Arbitration Agreement satisfies the second *Armendariz* requirement that there be appropriate discovery mechanisms.

**(3)    The Arbitration Agreement Provides for a Written Award.**

The Arbitration Agreement expressly provides that the arbitrator will "issue a decision or award in writing, stating the essential findings of fact and conclusions of law." (Wegley Decl., ¶ 6, Ex. A, Attachment B, ¶ 2.)  Rule 39(c) of the AAA Rules also requires the arbitrator to prepare the award "in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise." (Brenner Decl., ¶ 3, Ex. A,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Rule 39(c).)    As such, the Arbitration Agreement satisfies the *Armendariz* written award requirement.

**(4)    The Arbitration Agreement Provides for the Same Relief Otherwise Available in Court.**

Neither the Arbitration Agreement nor the AAA Rules limits the remedies that either party may obtain in the arbitration.    Instead, the Arbitration Agreement expressly provides that the arbitrator "may award any party any remedy to which that party is entitled under applicable law." (Wegley Decl., ¶ 6, Ex. A, Attachment B, ¶ 2.)    Similarly, Rule 39(d) of the AAA Rules provides that the arbitrator may "grant any remedy or relief that would have been available to the parties . . . in accordance with applicable law." (Brenner Decl., ¶ 3, Ex. A, Rule 39(d).)    McElrath's remedies are therefore not limited in any way if this dispute is arbitrated.    To that end, the Arbitration Agreement satisfies the fourth *Armendariz* requirement that the parties are not limited in the remedies each may seek.

**(5)    Uber Has Agreed to Pay Arbitration Costs.**

Under the express terms of the Arbitration Agreement, Uber has agreed that it will pay the arbitrator's and arbitration fees "in all cases where required by law." (Wegley Decl., ¶ 6, Ex. A, Attachment B, ¶ 2.)    By agreeing to pay these fees, Uber satisfies the final *Armendariz* factor.

Accordingly, the Arbitration Agreement is fully enforceable and complies with each *Armendariz* requirement.

**b.    The Arbitration Agreement Encompasses This Dispute.**

McElrath's claims fall squarely within the scope of the Arbitration Agreement.    The Arbitration Agreement broadly covers "any and all claims arising out of or related to [McElrath's] employment with [Uber]" including, as exactly relevant here, any and all claims relating to "stock or stock options or other ownership interest in [Uber]." (Wegley Decl., ¶ 6, Ex. A, ¶ 8(f).)    Additionally, the Dispute Resolution Agreement reiterates that the Arbitration Agreement "applies to any dispute arising out of or related to Employee's employment with Uber Technologies, Inc." (*Id.*, ¶ 6, Ex. A, Attachment B, ¶ 1.)    Here, McElrath's claims are premised on his allegations that, because Uber allowed him to exercise his stock options early, some of

McElrath's stock options were deemed to be NSOs rather than ISOs. Therefore, McElrath's claims unquestionably relate to or arise out of his employment with Uber, and are thus encompassed by the broad arbitration clause. *See EFund Capital Partners v. Pless*, 150 Cal. App. 4th 1311, 1323 (2007) (citation omitted) ("The phrase 'any controversy . . . arising out of or relating to this contract . . .' is certainly broad enough to embrace tort as well as contractual liabilities so long as they have their roots in the relationship between the parties which was created by the contract."); *Coast Plaza Doctors Hosp. v. Blue Cross of California*, 83 Cal. App. 4th 677, 681, 685-86 (2000). Because the parties agreed to arbitrate all claims "arising out of or related to [McElrath's] employment with [Uber]," including claims for "stock or stock options," and because the Arbitration Agreement otherwise satisfies the *Armendariz* factors, McElrath is required to arbitrate these claims under the FAA. *See Bencharsky v. Cottman Transmission Sys., LLC*, 625 F. Supp. 2d 872, 876 (N.D. Cal. 2008) ("[A] district court has little discretion to deny an arbitration motion" pursuant to a valid arbitration agreement).

2.    **Compelling Arbitration of McElrath's Individual Claims Does Not Conflict with *Morris* Because the Class Waiver Is Severable from the Arbitration Agreement.**

For the reasons discussed, this Court should enforce the Arbitration Agreement to apply to McElrath's *individual* claims. Indeed, as Uber explained above, it is not seeking – and the Court may not order – class arbitration. *See Solarcity*, 2016 WL 6778662, at *4 (citing *Stolt-Nielsen*, 559 U.S. at 684). Instead, because the class action waiver clause in McElrath's Employment Agreement is severable, the remainder of McElrath's Arbitration Agreement is enforceable, requiring arbitration of his individual claims. *Morris*'s holding that class action waivers are unenforceable does not change this result.

As an initial matter, courts in this circuit have previously enforced similar arbitration agreements containing severable class waivers. *See, e.g., Gerton*, 2016 WL 613011, at *6, 9; *Galvan v. Michael Kors USA Holdings, Inc.*, No. CV1607379BROAFMX, 2017 WL 253985, at *10 (C.D. Cal. Jan. 19, 2017). In *Morris*, the Ninth Circuit held that an arbitration agreement that required employees to bring claims in "separate proceedings" violated the employees' right to engage in concerted activity under the NLRA because it prohibited class and collective action.

12.

*Morris*, 834 F.3d at 990. Following *Morris*, this Court declined to compel arbitration of certain individual claims where the unenforceable class waiver was not severable from the agreement, thereby rendering the entire agreement unenforceable. *See Solarcity*, 2016 WL 6778662, at *4. But *Solarcity* is distinguishable from this case. There, defendant Solarcity did not argue that the class waiver was severable from the plaintiff's arbitration agreement, and therefore, did not cite relevant authority supporting severability for the court's consideration.

More importantly, however, the *Morris* court acknowledged that even if a contract contains an unenforceable class action waiver provision,[5] that provision may be severable from the contract such that arbitration may ultimately be required in the case:

> Because the district court's order compelling arbitration was based, at least in part, on the separate proceedings provision, we must vacate the order and remand to the district court to determine whether the "separate proceedings" clause is severable from the contract. We take no position on whether arbitration may ultimately be required in this case.

*Morris*, 834 F.3d at 990.[6]

Indeed, several other courts in this circuit have held that "unconscionable class action waivers" are severable from arbitration agreements. *See, e.g., Gerton*, 2016 WL 613011, at *6; *Galvan*, 2017 WL 253985, at *10. After *Morris*, the district court in *Galvan* reiterated that "the Court may sever . . . unconscionable [class-waiver] provisions in an arbitration agreement and enforce the remainder of the agreement." *Galvan*, 2017 WL 253985, at *10 (citing *Armendariz*, 24 Cal. 4th 121-22) (compelling arbitration of plaintiff's *individual* claims and staying class claims).

As courts have explained, an unconscionable provision of an arbitration agreement may be severed to retain the remaining provisions. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71-72 (2010); *Davis*, 485 F.3d at 1084 (a court's finding that the agreement contains "flawed

---

[5] Uber is by no means conceding that class action waivers, like the provision in McElrath's Employment Agreement, are unenforceable. As discussed *infra* Section III.B, the issue of enforceability is squarely before the Supreme Court.

[6] The Ninth Circuit acknowledged that "[u]nder *Stolt*, an arbitrator may not add to the terms of an arbitration agreement, and therefore may not order class arbitration unless the contract provides for it." *Morris*, 834 F.3d at 985, n. 8 (citing *Stolt-Nielsen*, 559 U.S. at 684).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

provisions" does not necessarily mean the entire agreement is unconscionable). Under California law, only an arbitration agreement that is "permeated" or "tainted" with multiple unconscionable provisions, such that the provisions cannot be severed without reforming the contract, is unenforceable. *Armendariz*, 24 Cal. 4th at 123-25. To that end, courts consider whether the offending clauses are central or collateral to the purpose of the agreement, and what the resulting agreement will look like after severance. *Davis*, 485 F.3d at 1084 (severance not possible if striking provisions would "gut[]" agreement).

Here, the class waiver in the Arbitration Agreement is severable from the Arbitration Agreement because it is merely collateral to the agreement's main purpose. First, the class waiver is set forth in its own sub-section of the agreement, which is clearly identified by the title "Class Action Waiver." *See Gerton*, 2016 WL 613011, at *6 (finding "the class action waiver provision [] easily severable, because it is self-contained in its own section of the Arbitration Agreement"). Second, the Arbitration Agreement specifically warned that in the event any portion of the agreement is deemed unenforceable, the remainder of it would be enforceable. (*See* Wegley Decl. ¶ 6, Ex. A, Attachment B, ¶¶ 3-4.) Thus, as in *Gerton*, this "self-contained" provision "does not constitute permeation or demonstrate a 'systematic effort' to disadvantage [McElrath] by imposing arbitration." *Gerton*, 2016 WL 613011, at *6 (citing *Armendariz*, 24 Cal. 4th at 124). The Court should therefore sever the class-waiver provision and find that the remaining provisions of the Arbitration Agreement – which require arbitration of McElrath's individual claims – are enforceable. *See Gerton*, 2016 WL 613011, at *6. Accordingly, McElrath's individual claims should be arbitrated irrespective of the class waiver.

### 3. The FAA Requires a Stay of Class Claims Until Resolution of McElrath's Individual Arbitration.

While McElrath's individual claims are being adjudicated in arbitration, his class claims should be stayed. The FAA compels the Court to stay an action provided that the requirements set forth in Section 3 of the FAA are met, which states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such

14.

suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Thus, this section requires that if: (1) the suit concerns any issue referable to arbitration; and (2) the moving party is not in default in proceeding with arbitration, then the court should stay the trial of the action pending arbitration. *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 400-04 (1967); *China Union Lines, Ltd. v. American Marine Underwriters, Inc.*, 458 F. Supp. 132, 135 (S.D.N.Y. 1978) ("so long as (1) there is an agreement to arbitrate and (2) at least one of the issues involved in the suit is within the scope of the arbitration agreement, a stay is to be granted as a matter of course, except in rare cases").

In *Shepardson v. Adecco USA, Inc.*, No. 15-CV-05102-EMC, 2016 WL 1322994 (N.D. Cal. Apr. 5, 2016), for instance, the court stayed plaintiff's nonarbitrable PAGA claim pending the outcome of the arbitration of plaintiff's individual arbitrable claims. Because the factual allegations underlying the arbitrable and nonarbitrable claims were identical, the court determined that a stay was "warranted by considerations of judicial convenience because [the] plaintiff's success at arbitration may render litigation of the nonarbitrable claims unnecessary." *Shepardson*, 2016 WL 1322994, at *6 (quoting *Gilmore v. Shearson/Am. Exp., Inc.*, 668 F. Supp. 314, 321, n.11 (S.D.N.Y. 1987)).

The same is true here. As discussed, *supra* Section III.A.1.b, this action falls squarely within the purview of the Arbitration Agreement. Here, as in *Shepardson*, the class claims are dependent upon McElrath's success in arbitration. If the arbitrator finds that McElrath's individual claims lack merit, the class claims must fail because he would not be an adequate representative of the class. Accordingly, if the Court grants an order compelling arbitration of McElrath's claims, the Court should stay the class proceedings pending the completion of his arbitration pursuant to Section 3 of the FAA.

/ / /

/ / /

**B.    Alternatively, the Court Should Stay the Entire Proceeding Pending the Supreme Court's Decision in *Morris*.**

As noted above, the Ninth Circuit's approach to class action waivers in *Morris* has been rejected by several other circuits. *See Cellular Sales*, 824 F.3d 772; *D.R. Horton*, 737 F.3d 344; *Sutherland*, 726 F.3d 290. To resolve this circuit split, the Supreme Court recently granted *certiorari* in *Morris* and several other cases. Given this uncertainty over the continued viability of *Morris*, Uber respectfully submits that, if the Court declines to compel arbitration of McElrath's individual claims at this time, the Court should stay the entire proceeding until the Supreme Court decides *Morris*. As this Court recently recognized in similar situations, a stay pending the Supreme Court's review of this important threshold question "would be efficient for the Court's own docket and the fairest course for the parties." *Larroque*, 2016 WL 39787, at *2 (citing *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979)); *see also Ramirez v. Trans Union, LLC*, 2015 WL 6159942, at *1 (N.D. Cal. June 22, 2015) (Corley, J.) (the "orderly course of justice and balance of hardships" favors the imposition of a stay).

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes of action on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva*, 593 F.2d at 863; *see also Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

In deciding whether to grant a stay under *Landis*, a court may weigh the following: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55). Here, all three factors weigh in favor of a stay.

**First**, McElrath will not suffer any damages from the granting of a stay. Here, McElrath

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

filed this action in December 2016, neither party has conducted discovery, and only this Motion is pending before the Court. Thus, because this case is still in its early stages, there are no deadlines that will be affected by a stay. *Larroque*, 2016 WL 39787, at *2. In contrast, Uber will suffer "significant hardship" if the Court does not stay the case. *Id.* If the Supreme Court overturns *Morris* and instead agrees with the Second, Fifth, and Eighth Circuits, the class action waiver in Uber's Arbitration Agreement will be enforceable and McElrath will be precluded from bringing his putative class action. *See Cellular Sales*, 824 F.3d at 775; *D.R. Horton*, 737 F.3d at 362; *Sutherland*, 726 F.3d at 297 n.8. Therefore, without a stay, Uber "will be required to defend a large putative class action – engaging in expansive discovery and possibly class certification briefing – that may be rendered moot and unnecessary" by the *Morris* decision. *Larroque*, 2016 WL 39787, at *2; *see Ramirez*, 2015 WL 6159942, at *2.

**Second**, as in *Ramirez*, the possible prejudice to McElrath is "minimal" here because the *Morris* decision "will likely be issued within a year per the Supreme Court's customary practice" after granting certification of a petition. *Ramirez*, 2015 WL 6159942, at *2.

**Finally**, a stay is in the interest of judicial economy and the orderly course of justice. Given that the Supreme Court's decision in *Morris* will directly impact whether McElrath can bring the putative class action he presently asserts, the Court should stay the case so that judicial resources will not be "unnecessarily expended reviewing the adequacy of the pleadings, resolving discovery disputes, and considering class certification in a case" that may not ultimately be able to proceed as a class action. *Larroque*, 2016 WL 39787, at *2.

Therefore, under this Court's previous precedent, the Court should stay the entire proceeding pending *Morris* if it does not grant Uber's motion to compel arbitration of McElrath's individual claims and stay the class claims.

/ / /

/ / /

/ / /

/ / /

## IV.    CONCLUSION

Based on the foregoing, the Court should grant Uber's motion to compel arbitration of McElrath's individual claims and stay the class claims pending the resolution of the arbitration. In the alternative, the Court should order a stay of the entire proceeding until the Supreme Court decides *Morris*.

Dated: February 10, 2017                    COOLEY LLP


By: _____/s/ Patrick E. Gibbs_____
                                Patrick E. Gibbs

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOT. OF MTN. & MEMO OF P'S & A'S I/S/O MTN. TO COMPEL ARBITRATION:16-CV-07241-JSC