# EXHIBIT A

*This offer letter supersedes and replaces all previous agreements or offer letters.*

**Uber Technologies, Inc.**
1455 Market Street, 4th Floor
San Francisco, CA 94103

September 3, 2014

Lenza McElrath

Re:   **EMPLOYMENT AGREEMENT**

Dear Lenza

On behalf of Uber Technologies, Inc., a Delaware corporation (the "Company"), I am pleased to offer you the position of Senior Software Engineer of the Company. Your employment by the Company shall be governed by the following terms and conditions (this "Agreement"):

1. **Duties and Scope of Employment.**

   a. **Position.** For the term of your employment under this Agreement (your "Employment"), the Company agrees to employ you in the position of Senior Software Engineer or in such other position as the Company subsequently may assign to you. You will report to the Company's Engineering Manager, Jeremy Suurkivi, or to such other person as the Company subsequently may determine. You will be working out of the Company's office in San Francisco, CA. You will perform the duties and have the responsibilities and authority customarily performed and held by an employee in your position or as otherwise may be assigned or delegated to you by your supervisor.

   b. **Obligations to the Company.** During your Employment, you shall devote your full business efforts and time to the Company. During your Employment, without express written permission from the Chief Executive Officer or one of his direct reports, you shall not render services in any capacity to any other person or entity and shall not act as a sole proprietor or partner of any other person or entity or own more than five percent of the stock of any other corporation. Notwithstanding the foregoing, you may serve on corporate, civic or charitable boards or committees, deliver lectures, fulfill speaking engagements, teach at educational institutions, or manage personal investments without such advance written consent, provided that such activities do not individually or in the aggregate interfere with the performance of your duties under this Agreement. You shall comply with the Company's policies and rules, as they may be in effect from time to time during your Employment.

   c. **No Conflicting Obligations.** You represent and warrant to the Company that you are under no obligations or commitments, whether contractual or otherwise, that are inconsistent with your obligations under this Agreement. In connection with your Employment, you shall not use or disclose any trade secrets or other proprietary information or intellectual property in which you or any other person has any right, title or interest and your Employment will not infringe or violate the rights of any other person. You represent and warrant to the

1

*This offer letter supersedes and replaces all previous agreements or offer letters.*

Company that you have returned all property and confidential information belonging to any prior employer.

    d.    **Commencement Date.**  You shall commence full-time Employment as soon as reasonably practicable and in no event later than September 29, 2014.

    2.    **Cash and Incentive Compensation.**

    a.  **Salary.**  The Company shall pay you as compensation for your services an initial base salary at a gross annual rate of $160,000. Such salary shall be payable in accordance with the Company's standard payroll procedures.  The annual compensation specified in this subsection (a), together with any modifications in such compensation that the Company may make from time to time, is referred to in this Agreement as "Base Salary."

    b.  **Relocation Payment.** In order to assist you to move yourself and your household from current city to San Francisco, CA the Company will reimburse you up to an amount that will not exceed $10,000 to cover your actual relocation expenses incurred for the following items (if applicable):  closing costs on the sale of your home in current city, transportation from current city to San Francisco, CA, storage of household goods and temporary housing in San Francisco, CA (the "Relocation Payment").  The Relocation Payment shall be made to you net of all applicable withholding taxes and other applicable deductions in accordance with the Company's standard payroll practices.  In the event you voluntarily terminate your employment with Uber within 12 months of receipt of the relocation payment, you agree to repay the entire relocation payment to Uber and authorize Uber to deduct this amount from any outstanding wages due to you in your final paycheck.

    c.  **Stock Options.**  Subject to the approval of the Company's Board of Directors (the "Board"), the Company shall grant you a stock option covering 20,000 shares of the Company's Common Stock (the "Option").  The Option shall be granted as soon as reasonably practicable after the date of this Agreement or, if later, the date you commence full-time Employment.  The exercise price per share will be equal to the fair market value per share on the date the Option is granted, as determined by the Company's Board of Directors in good faith compliance with applicable guidance in order to avoid having the Option be treated as deferred compensation under Section 409A of the Internal Revenue Code of 1986, as amended. There is no guarantee that the Internal Revenue Service will agree with this value.  You should consult with your own tax advisor concerning the tax risks associated with accepting an option to purchase the Company's Common Stock.  The term of the Option shall be 10 years, subject to earlier expiration in the event of the termination of your services to the Company.  The Option shall vest and become exercisable at the rate of 25% of the total number of option shares after the first 12 months of continuous service and the remaining option shares shall become vested and exercisable in equal monthly installments over the next three years of continuous service.  The Option will be an incentive stock option to the maximum extent allowed by the tax code and shall be subject to the other terms and conditions set forth in the Company's 2013 Stock Plan (the "Stock Plan") and in the Company's standard form of Stock Option Agreement.

    3.    **Vacation/PTO and Employee Benefits.**  During your Employment, you shall be eligible for paid vacation / paid time off, in accordance with the Company's vacation / paid time off policy, as it may be amended from time to time.  During your Employment, you shall be eligible to participate in the employee benefit plans maintained by the Company and generally available to similarly situated employees of the Company, subject in each case to the generally applicable terms and conditions of the plan in question and to the determinations of any person or committee administering such plan.

March 2014

*This offer letter supersedes and replaces all previous agreements or offer letters.*

4.    **Business Expenses.** The Company will reimburse you for your necessary and reasonable business expenses incurred in connection with your duties hereunder upon presentation of an itemized account and appropriate supporting documentation, all in accordance with the Company's generally applicable policies.

5.    **Termination.**

a.    **Employment at Will.** Your Employment shall be "at will," meaning that either you or the Company shall be entitled to terminate your Employment at any time and for any reason, with or without Cause. Any contrary representations that may have been made to you shall be superseded by this Agreement. This Agreement shall constitute the full and complete agreement between you and the Company on the "at-will" nature of your Employment, which may only be changed in an express written agreement signed by you and a duly authorized officer of the Company.

b.    **Rights Upon Termination.** Except as expressly provided herein, upon the termination of your Employment, you shall only be entitled to the compensation and benefits earned and the reimbursements described in this Agreement for the period preceding the effective date of the termination.

6.    **Pre-Employment Conditions.**

a.    **Confidentiality Agreement.** Your acceptance of this offer and commencement of employment with the Company is contingent upon the execution, and delivery to an officer of the Company, of the Company's Confidential Information and Invention Assignment Agreement, a copy of which is enclosed for your review and execution (the "Confidentiality Agreement"), prior to or on your Start Date.

b.    **Right to Work.** For purposes of federal immigration law, you will be required to provide to the Company documentary evidence of your identity and eligibility for employment in the United States. Such documentation must be provided to us within three (3) business days of your Start Date, or our employment relationship with you may be terminated.

7.    **Successors.**

a.    **Company's Successors.** This Agreement shall be binding upon any successor (whether direct or indirect and whether by purchase, lease, merger, consolidation, liquidation or otherwise) to all or substantially all of the Company's business and/or assets. For all purposes under this Agreement, the term "Company" shall include any successor to the Company's business or assets that becomes bound by this Agreement.

b.    **Your Successors.** This Agreement and all of your rights hereunder shall inure to the benefit of, and be enforceable by, your personal or legal representatives, executors, administrators, successors, heirs, distributees, devisees and legatees.

8.    **Miscellaneous Provisions.**

a.    **Notice.** Notices and all other communications contemplated by this Agreement shall be in writing and shall be deemed to have been duly given when personally delivered or when mailed by U.S. registered or certified mail, return receipt requested and postage prepaid. In your case, mailed notices shall be addressed to you at the home address that you most recently communicated to the Company in writing. In the case of the Company, mailed notices shall be addressed to its corporate headquarters, and all notices shall be directed to the attention of its Secretary.

b.    **Modifications and Waivers.** No provision of this Agreement shall be modified, waived or discharged unless the modification, waiver or discharge is agreed to in writing and signed by you and by an authorized officer of the Company (other than you). No

3

March 2014

*This offer letter supersedes and replaces all previous agreements or offer letters.*

waiver by either party of any breach of, or of compliance with, any condition or provision of this Agreement by the other party shall be considered a waiver of any other condition or provision or of the same condition or provision at another time.

      c.      **Whole Agreement.**    No other agreements, representations or understandings (whether oral or written and whether express or implied) which are not expressly set forth in this Agreement have been made or entered into by either party with respect to the subject matter hereof. This Agreement and the Confidentiality Agreement contain the entire understanding of the parties with respect to the subject matter hereof.

      d.      **Withholding Taxes.** All payments made under this Agreement shall be subject to reduction to reflect taxes or other charges required to be withheld by law.

      e.      **Choice of Law and Severability.** This Agreement shall be interpreted in accordance with the laws of the State of California without giving effect to provisions governing the choice of law. If any provision of this Agreement becomes or is deemed invalid, illegal or unenforceable in any applicable jurisdiction by reason of the scope, extent or duration of its coverage, then such provision shall be deemed amended to the minimum extent necessary to conform to applicable law so as to be valid and enforceable or, if such provision cannot be so amended without materially altering the intention of the parties, then such provision shall be stricken and the remainder of this Agreement shall continue in full force and effect. If any provision of this Agreement is rendered illegal by any present or future statute, law, ordinance or regulation (collectively, the "Law") then that provision shall be curtailed or limited only to the minimum extent necessary to bring the provision into compliance with the Law. All the other terms and provisions of this Agreement shall continue in full force and effect without impairment or limitation.

      f.      **Arbitration.**  As set forth in more detail in the Alternate Dispute Resolution Agreement (attached hereto as Attachment B), You and the company agree to submit to mandatory binding arbitration any and all claims arising out of or related to your employment with the Company and your termination thereof, including but not limited to, claims for unpaid wages, wrongful terminations, torts, stock or stock options or other ownership interest in the Company and/or discrimination (including harassment) based upon any federal, state or local ordinance, statute, regulation or constitutional provision, except that each party may, at its, his or her option, seek injunctive relief in court related to the improper use, disclosure or misappropriation of a party's proprietary, confidential or trade secret information. All arbitration hearings shall be conducted in San Francisco County, California. THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY JURY IN REGARD TO SUCH CLAIMS. This Agreement does not restrict your right to file administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict the employee's ability to file such claims (including, but not limited to, the National Labor Relations Board, the Equal Employment Opportunity Commission and the Department of Labor).

      g.      **No Assignment.** This Agreement and all of your rights and obligations hereunder are personal to you and may not be transferred or assigned by you at any time. The Company may assign its rights under this Agreement to any entity that assumes the Company's obligations hereunder in connection with any sale or transfer of all or a substantial portion of the Company's assets to such entity.

      h.      **Counterparts.**  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

March 2014

*This offer letter supersedes and replaces all previous agreements or offer letters.*

*[Signature Page Follows]*

March 2014

*This offer letter supersedes and replaces all previous agreements or offer letters.*

We are all delighted to be able to extend you this offer and look forward to working with you. Please understand that this offer is contingent upon successful completion of your background check investigation. To indicate your acceptance of the Company's offer, please sign and date this letter in the space provided below and return it to me, along with a signed and dated original copy of the Confidentiality Agreement. The Company requests that you begin work in this new position on or before September 29, 2014. This offer must be accepted on or before September 4, 2014. Please indicate the date (either on or before the aforementioned date) on which you expect to begin work in the space provided below (the "Start Date").

Very truly yours,

Uber Technologies, Inc.

By: _Jeremy Suurkivi_____

Name: Jeremy Suurkivi

Title: Engineering Manager

ACCEPTED AND AGREED:

Lenza McElrath
_Lenza McElrath_
_____

Sep 3, 2014
_____
Date

Anticipated Start Date:  September 29, 2014

Attachment A:  Confidential Information and Invention Assignment Agreement

Attachment B: Alternate Dispute Resolution Agreement

March 2014

*This offer letter supersedes and replaces all previous agreements or offer letters.*

## ATTACHMENT A

## CONFIDENTIAL INFORMATION AND
## INVENTION ASSIGNMENT AGREEMENT

*(See Attached)*

March 2014

*This offer letter supersedes and replaces all previous agreements or offer letters.*

## ATTACHMENT B

ALTERNATE DISPUTE RESOLUTION AGREEMENT

*(See Attached)*

8

March 2013

**DISPUTE RESOLUTION AGREEMENT**

**1.     How This Agreement Applies**:  This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.   This Agreement applies to any dispute arising out of or related to Employee's employment with Uber Technologies, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment and survives after the employment relationship terminates.  Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration.  This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.  Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, but not as to the enforceability, revocability or validity of the Agreement or any portion of the Agreement, including the Class Action Waiver described below.

Except where this Agreement otherwise provides, this Agreement also applies, without limitation, to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), and state statutes, if any, addressing the same or similar subject matters, and all other federal and state statutory and common law claims to the extent permitted by law.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate.  Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp).

**2.     How Arbitration Proceedings Are Conducted:**  Except as provided in this Agreement, any controversy or claim covered by this Agreement shall be settled by arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association ("AAA") then in effect.  These rules are available at www.adr.org, or you can ask Human Resources for a copy.  The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period.  In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.  Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law.  However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees.  The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement.  The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law.  A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.  A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

February 2014

**3.     Class Action Waiver:** <u>You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative basis.</u> There will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective, representative or private attorney general action, or as a member in any purported class, collective, representative or private attorney general proceeding, including without limitation pending but not certified class actions ("Class Action Waiver"). Disputes regarding the validity and enforceability of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. In any case in which (1) the dispute is filed as a class, collective, representative or private attorney general action and (2) a civil court of competent jurisdiction finds all or part of the Class Action Waiver unenforceable, the class, collective, representative and/or private attorney general action must be litigated in a civil court of competent jurisdiction, but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration.

Although an Employee will not be retaliated against, disciplined or threatened with discipline as a result of his or her exercising his or her rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class, collective or representative action in any forum, the Company may lawfully seek enforcement of this Agreement and the Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims. Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.

The Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

**4.     Enforcement Of This Agreement:** This Agreement is the full and complete agreement relating to the formal resolution of employment-related disputes. Except as otherwise expressly stated, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration.

**AGREED:**                                          **AGREED:**

Dated: Sep 3, 2014 _____


**Employee**                                         **Uber Technologies, Inc.**


_Lenza McElrath_ _____     By_____
[Signature]                                          Ryan Graves
                                                     VP, Worldwide Operations

Lenza McElrath
_____
Name Printed

February 2014                              2