R. Scott Erlewine, State Bar No. 095106
Nicholas A. Carlin, State Bar No. 112532
Brian S. Conlon, State Bar No. 303456
Pola C. Stein, State Bar No. 278791_____.
PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 - The Presidio
San Francisco, CA 94129
Telephone: 415-398-0900 - Fax: 415-398-0911
Email:   rse@phillaw.com
         nac@phillaw.com
         bsc@phillaw.com
         pcs@phillaw.com

Attorneys for Plaintiff

COOLEY LLP
Patrick E. Gibbs (SBN 183174) (pgibbs@cooley.com)
Wendy J. Brenner (SBN 198608) (brennerwj@cooley.com)
Alli S. Davidson (SBN 267964) (adavidson@cooley.com)
Michelle Ton (SBN 300942) (mton@cooley.com)
Addison Litton (305374) (alitton@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:  (650) 843-5000
Facsimile:  (650) 849-7400

Attorneys for Defendant UBER TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENZA H. MCELRATH III, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC.<br><br>Defendant. | **Case No. 3:16-cv-07241-JSC**<br><br>**CLASS ACTION**<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:        March 23, 2017<br>Time:        9:00 a.m.<br>Judge:       Hon. Jacqueline S. Corley<br>Courtroom:   F, 15th Flr. |

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT – Case No. 3:16-cv-07241-JSC**

Pursuant to Federal Rule of Civil Procedure 26(f) and Civil Local Rule 16-9, the undersigned counsel for Plaintiff Lenza H. McElrath III ("Plaintiff") and Defendant Uber Technologies, Inc. ("Defendant" or "Uber") hereby submit this Joint Case Management Statement.

## I.     JURISDICTION AND SERVICE

There are no issues pending concerning personal jurisdiction or venue and no parties remain to be served.

### A.     Plaintiff's Positions

Plaintiff asserts that this Court has subject matter jurisdiction over the individual and class claims asserted in this action: a) under 28 U.S.C. § 1332(a)(1), because Plaintiff and Uber are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs; and b) under the Class Action Fairness Act (28 U.S.C. § 1332(d)), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are at least 100 class members, and at least one member of the proposed class is a citizen of a state different than Defendant.

### B.     Defendant's Position

Defendant does not contest that this Court has subject matter jurisdiction over the individual and class claims asserted in this action under 28 U.S.C. § 1332(a)(1), because Plaintiff and Uber are citizens of different States and the amount in controversy, based on the face of the pleadings, exceeds $75,000, exclusive of interest and costs.  However, it is Defendant's position that this Court does not have subject matter jurisdiction over Plaintiff's individual claims because they are subject to the Arbitration Agreement (described further below), and this Court will not have subject matter jurisdiction over Plaintiff's class claims if the Ninth Circuit's decision in *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted* (U.S. Jan. 13, 2017) is overturned.

## II.     FACTS

### A.     <u>Plaintiff's Position</u>

Defendant Uber devised a fraudulent scheme to recruit highly sought software engineers and others by promising in its standardized Employment Agreements the most valuable type of stock options (Incentive Stock Options – "ISOs").  Specifically, the Employment Agreement stated that "Subject to the approval of the Company's Board of Directors (the "Board"), the Company ***shall grant you a stock option*** covering [stated number] shares of the company's common stock (The Option")," and that "***the Option will be an incentive stock option to the maximum extent allowed by the tax code***"  (emphasis added).  The Employment Agreement further specified a four-year vesting/exercisability schedule which <u>guaranteed</u> the ISOs would receive maximum ISO treatment:

> "The Option shall vest and become *exercisable at the rate of 25% of the total number of option shares after the first 12 months of continuous service* and the remaining option shares shall become vested and *exercisable in equal monthly installments over the next three years of continuous service*." (emphasis added)

Compl., ¶¶ 15-16, Ex. A. This is because the Internal Revenue Code imposes a $100,000 limit on the total aggregate fair value of ISOs that are exercisable by an employee during any calendar year and deems the excess over $100,000 to be NSOs. 26 U.S.C. §422(d).  By specifying a four-year exercisability schedule, the employee was guaranteed that up to $400,000 (4 x $100,000) of the options would be guaranteed to receive ISO treatment, rather than up to a maximum $100,000 if they were all exercisable within one year.  Compl., ¶¶13-14.

Yet, months after employees started work, Uber breached its Employment Agreements by systematically giving each employee a standardized Notice of Stock Option Grant, which confirmed that the employee had been granted the number of Incentive Stock Options promised in the Employment Agreement, but contained a dramatically different exercisability clause:

"**This Option shall be exercisable in whole or in part six months after the Date of Grant."**
Compl., ¶ 16. This new six-month exercisability schedule was directly contrary to the four-year exercisability schedule specified in the Employment Agreement, and had the effect of making

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA 94129
(415) 398-0900

all of the options exercisable during one calendar year, thereby resulting in Uber disqualifying all of the options above $100,000 from ISO treatment, demoting the rest to Non-Qualified Stock Options – NSOs.  This reclassification has also permitted Uber to take millions of dollars of payroll tax deductions which it otherwise would not be entitled to take, because NSOs are treated as ordinary income.  Compl., ¶¶ 13-14, 17-23a.

The financial advantages of ISOs over NSOs are dramatic.  An ISO is generally only taxed upon sale of the stock (not upon exercise of the option) and is also subject to favorable capital gains treatment.  26 U.S.C. §§ 421, 422.  In contrast, NSOs are taxed much earlier – at the time of exercise – and at the employee's ordinary income tax rate upon exercise.  26 U.S.C. §83(a).  Compl., ¶¶ 11-13.  For Uber's employees, this tax is many times the strike price and can total hundreds of thousands of dollars, meaning that NSOs – unlike ISOs -- impede an employee's ability to exercise the option depending on whether he or she has the financial resources to pay the tax.  Compl., ¶¶ 23b-c.

In addition, after employees started work, Uber systematically imposed severe limits on the time frames that employees could exercise their options (which Uber terms "Trading Windows"), in further derogation of promises contained in its Employment Agreements.  As a result, Uber employees were and are unable to exercise their options at the designated times, and some employees who left the Company were unable to exercise their remaining vested options at all because the Trading Windows were closed for the period of time they were permitted to exercise following their departure.  Compl., ¶¶ 24-25.

Plaintiff is a senior software engineer employed by Uber who was victimized by this scheme and breaches of contract.  In reliance upon Uber's promise in the employment agreement that Plaintiff would receive 20,000 ISOs, in September 2014 Plaintiff accepted employment with Uber and re-located from the State of Washington to San Francisco.  When Uber issued the grant of stock options to Plaintiff several months after he started his employment, Uber unilaterally changed the exercisability schedule and thereby reclassified 70% (almost 14,000) of those options as NSOs. Compl., ¶¶ 26-33.  As a result of the requirement that an employee pay taxes on NSOs at the time of exercise, it was financially impracticable for Plaintiff to exercise all of his vested

"NSO" options. In addition, Uber refused to recognize several option exercises Plaintiff did make, asserting that the "Trading Window" was closed. Compl., ¶¶ 11-13.

Plaintiff brings this lawsuit on behalf of himself and the following classes and subclasses of similarly situated persons:

> UBER INCENTIVE STOCK OPTION CLASS: All current and former employees of Uber during the four years prior to the filing of the Complaint, who were promised ISOs for Uber Stock in their Employment Agreements but some portion of whose options were deemed NSOs due to Uber imposing a shorter exercisability schedule in the Notice of Stock Option Grant than contained in the Employment Agreements.
>
> UBER TRADING WINDOW CLASS: All current and former employees of Uber during the four years prior to the filing of the Complaint, who were prevented by Uber through the imposition of Trading Windows from exercising stock options for Uber stock in accordance with the timing of the exercisability schedule set forth in the Employment Agreements.
>
> RELOCATION SUBCLASS: All current and former members of the Uber Incentive Stock Option Class and/or Uber Trading Window Class who, during the four years prior to the filing of the Complaint, relocated their residence to work for Uber. Compl., ¶ 34.

### B. Defendant's Position

On September 3, 2014, Plaintiff accepted an offer of employment from Uber (the "Employment Agreement"), which stated that "[s]ubject to the approval of the Company's Board of Directors," he would receive "a stock option covering 20,000 shares" of Uber's common stock (the "Option"). The Employment Agreement explained that the Option would be "an *incentive stock option* to the *maximum extent allowed by the tax code*," and expressly stated that the Option would be "subject to the other terms and conditions set forth in the Company's 2013 Stock Plan . . . and in the Company's standard form of Stock Option Agreement."

Shortly after commencing employment with Uber, Plaintiff received a notice of stock option grant from Uber (the "Notice"), stating that his Option had been granted. Consistent with the Employment Agreement, the Stock Option Agreement provided Plaintiff with an Option to

4

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT – Case No. 3:16-cv-07241-JSC**

purchase 20,000 shares, designated as ISOs to the maximum extent permitted under the Internal Revenue Code.[1] Plaintiff's Stock Option Agreement also provided that his Option would be "early exercisable" – that is, all of the shares subject to the Option (whether vested or not) could be exercised "in whole or in part" just six months after the date of the grant. As a result, all of the shares were exercisable in a single year. The aggregate value of such shares exceeded $100,000. As such, the $100,000 limit imposed by the Internal Revenue Code resulted in a portion of the shares being deemed ISOs (that portion with an aggregate value under $100,000) and the remaining shares deemed NSOs (that portion in excess of $100,000).

The Employment Agreement also included a broad arbitration agreement (the "Arbitration Agreement") requiring that any claims arising out of his employment with Uber, including those related to equity, be submitted to binding arbitration.

In May 2016, Plaintiff filed a complaint in San Francisco Superior Court asserting claims covered by the Arbitration Agreement, including breach of contract and misrepresentation, arising from the same set of facts alleged in this case. *See* Complaint, *McElrath III v. Uber Techs., Inc.*, No. CGC-16-551748 (Cal. Super. Ct., San Francisco Cnty., May 2, 2016). One day before the scheduled hearing on Uber's motion to compel arbitration of Plaintiff's claims, Plaintiff unilaterally amended his complaint to remove all claims covered by the Arbitration Agreement, leaving only a cause of action under the Private Attorney General Act ("PAGA"). *See* Amended Complaint, *McElrath III v. Uber Techs., Inc.*, No. CGC-16-551748 (Cal. Super. Ct., San Francisco Cnty., July 13, 2016). McElrath's PAGA claim was premised on Uber's alleged violations of

---

[1] The Internal Revenue Code does not permit employers to issue unlimited ISOs. Rather, the Internal Revenue Code imposes a $100,000 limit on the total aggregate fair value of ISOs that are exercisable by an employee within a calendar year. 26 U.S.C. § 422(d). Under this rule, if the value of option shares that are exercisable by an employee in any given year exceeds $100,000, the shares in excess of the $100,000 limit cannot legally be ISOs – those must be NSOs. Unlike ISOs, NSOs are taxed at the time of either grant or exercise, and are subject to capital gains tax upon the sale of the stock.

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

three California Labor Code sections. (*Id.*) On December 9, 2016, the state court sustained Uber's demurrer as to two of the three alleged labor code violations.[2]

Plaintiff responded to the state court's order largely sustaining Uber's demurrer by filing an overlapping, duplicative class action against Uber in the United States District Court, Northern District of California, asserting nearly identical claims from Plaintiff original complaint filed in the state action. On February 10, 2017, Uber filed a motion to compel arbitration of Plaintiff's individual claims and stay the class claims, or alternatively, stay of the entire proceeding pending the Supreme Court's review of *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted* (U.S. Jan. 13, 2017). (*See* Dkt. 18.) Uber's motion is scheduled for hearing on March 23, 2017 at 9 a.m. before this Court.

## III. LEGAL ISSUES

### A. **Plaintiff's Positions**

Plaintiff's Complaint (ECF No.#1) states the following claims: (i) breach of contract, (ii) breach of implied covenant of good faith and fair dealing, (iii) false promise, (iv) intentional misrepresentation, (v) violation of California Labor Code § 970, and (vi) violation of California Business & Professions Code §§ 17200 *et seq*. (the "UCL"). Plaintiff prays in the Complaint for compensatory, statutory, and punitive damages, restitution and disgorgement, specific performance, injunctive relief and attorneys' fees.

The principal issues to be resolved include: (a) whether Uber breached the employment agreements of Plaintiff and the other purported class members by promising ISOs to the maximum extent permitted by the specified exercisability schedule and then later imposing an accelerated exercisability schedule which Uber claims disqualified all but $100,000 of the options from ISO treatment, and also by later imposing Trading Windows in direct conflict with the exercisability schedules specified in the Employment Agreements; (b) whether Uber knowingly misled Plaintiff

---

[2] On February 6, 2017, the state court granted the parties' request to stay the action pending the entry of final judgment in this Court (not including any appeal), or further order of the state court. Order, *McElrath III v. Uber Techs., Inc.*, No. CGC-16-551748 (Cal. Super. Ct., San Francisco Cnty., Feb. 6, 2017).

and purported class members about these matters, (c) the extent to which Plaintiff and purported class members were damaged by Defendant's misrepresentations and breaches of contract, (c) the extent to which Defendant benefitted from its misrepresentations and breach of contract, (e) the validity and enforceability of the purported arbitration agreements and class action waivers, and (f) the propriety of class certification.

### B. Defendant's Position

Defendant anticipates the following disputed points of law, among others, will arise in this case: (a) whether Plaintiff may assert a claim for breach of contract; (b) whether Plaintiff may assert a claim for breach of implied covenant of good faith and fair dealing; (c) whether Plaintiff may assert a claim for false promise; (d) whether Plaintiff may assert a claim for intentional misrepresentation; whether Plaintiff may assert a claim for violation of California Labor Code § 970; (e) whether Plaintiff may assert a claim for violation of California Business & Professions Code §§ 17200 *et seq.*; (f) whether Plaintiff's claims are subject to the Arbitration Agreement and whether Plaintiff may maintain a class action; (g) whether a class may be certified; and (h) whether Plaintiff is entitled to compensatory, statutory, and punitive damages, restitution and disgorgement, specific performance, injunctive relief and attorneys' fees.

## IV. MOTIONS

### A. Pending Motions

Currently pending before this Court is Uber's Motion to Compel Arbitration of Plaintiff's Claims and Stay Class Claims, or in the alternative, stay entire proceeding, set for hearing on March 23, 2017. ECF #18. Plaintiff filed his opposition to Defendant's Motion on February 24, 2017, and Defendant filed its reply in further support of the Motion on March 3, 2017. ECF ## 20, 23.

### B. Anticipated Motions

#### a. Plaintiff's Position

At this time Plaintiff anticipates moving for summary judgment and for Class certification.

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA 94129
(415) 398-0900

  **b.**  **Defendant's Position**

Defendant anticipates that it may move for summary judgment, and intends to oppose any motion for summary judgment and motion for class certification.

## V. AMENDMENT OF PLEADINGS

### A. <u>Plaintiff's Position</u>

Plaintiff may seek to amend the pleadings based upon additional information obtained through stipulations, disclosures or discovery or otherwise and reserves the right to do so as the case progresses.

### B. <u>Defendant's Position</u>

Defendant reserves the right to oppose any amendments to the pleadings that Plaintiff is not entitled to as a matter of right.

## VI. EVIDENCE PRESERVATION

### A. <u>Plaintiff's Position</u>

The parties have met and conferred regarding reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action and shall follow the Northern District of California Guidelines for the Discovery of Electronically Stored Information.

### B. <u>Defendant's Position</u>

Defendant's counsel has instructed Uber regarding its evidence preservation obligations, and Uber has implemented document preservation protocols.

## VII. DISCLOSURES

The parties had their Rule 26(f) conference on March 2, 2017. The parties intend to fully and timely comply with the initial disclosure requirements of Fed. R. Civ. P. 26(a)(1)(C). The parties will exchange initial disclosures by March 22, 2017.

## VIII. DISCOVERY

### A. Discovery Taken To Date

#### a. **Plaintiff's Position**

Discovery has not yet commenced.  Plaintiff contends that discovery should commence immediately and that appropriately crafted procedures, as recommended in the *Manual for Complex Litigation*, also be employed.

#### b. **Defendant's Position**

Defendant contends that discovery should not proceed until after the Court has decided the pending motion to compel arbitration of Plaintiff's individual claims and stay the class claims, or alternatively, stay the entire proceeding.  Discovery should not start until after that time because the Court's decision may have the effect of (1) moving the venue of the case to arbitration, and limiting the scope to just Plaintiff's individual claims; or (2) staying the case in its entirety pending the Supreme Court's decision in *Morris*.

### B. Scope of Anticipated Discovery

#### a. **Plaintiff's Position**

Appropriate subjects for discovery include: Defendant's hiring policies and procedures; Defendant's recruitment strategies, policies and procedures; Defendant's policies and procedures concerning employee stock option grants; Defendant's policies and procedures concerning Trading Windows; Defendant's policies and procedures concerning stock option grant exercisability and vesting schedules; the process followed by Defendant's Board of Directors in deciding whether to approve and approving employment agreements, employee stock option grants, and notices of stock option grants; Defendant's adoption and use of a standardized employment agreement containing a four-year exercisability/vesting schedule; Defendant's adoption and use of a notice of stock option grant containing an accelerated exercisability schedule; Defendant's knowledge and communications concerning the $100,000 annual limit for ISOs; Defendant's tax filings and other financial records; the identities of all individuals falling into any of the above-described Classes or Subclass; Defendant's communications with all individuals falling into any of the above-described Classes or Subclass;

Defendant's agreements with all individuals falling into any of the above-described Classes or Subclass; Defendant's employee personnel files; Defendant's records of employee stock option grant exercise attempts and exercises; Defendant's loans to employees to cover stock option exercises.

### b. **Defendant's Position**

Defendant contends that it is premature to decide the scope of discovery, and that the scope should not be defined until after the Court has decided the pending motion to compel arbitration of Plaintiff's individual claims and stay the class claims, or alternatively, stay the entire proceeding for the reasons stated in Section VIII.A(b), above.

### C. Electronically-Stored Information

The Parties anticipate that discoverable information in this action will primarily be in electronic form. While the most effective and proportional methods of production of electronically stored information ("ESI") cannot yet be determined, the Parties agree to cooperate and confer about these issues if, and as, discovery proceeds.

### D. Privilege or Other Protections

The Parties expect that discovery sought will involve confidential information. Accordingly, the Parties will attempt in good faith to agree to, and then obtain Court approval of, stipulated protective orders to protect certain confidential information in accordance with the Northern District's Model Agreement for Stipulated Protective Order for Standard Litigation.

### E. Limitations or Modifications of Discovery

The Parties do not presently seek any modifications or limitations to the discovery provisions set forth in the Federal Rules of Civil Procedure, other than Defendant's position stated above with respect to the timing of discovery.

## IX. CLASS ACTIONS

### A. **Plaintiff's Position**

Plaintiff brings this class action under Federal Rules of Civil Procedure 23(a)23(b)(1), 23(b)(2) and/or 23(b)(3) for himself and appropriate class(es) of similarly-situated persons as

stated in Section 2a above and presently defined in the Complaint (at ¶34), or as further defined in any subsequent amendments thereto.

The prospective Class consists of at least hundreds of Uber employees who were similarly affected by Defendant's described conduct.

There are many questions of law common to Plaintiff and purported Class Members, including, *inter alia*: whether Defendant entered into written Employment Agreements which promised Class Members that they would be granted ISOs to the maximum extent permitted by the tax code and under a four-year exercisability schedule; whether Defendant breached the Employment Agreements by imposing an accelerated exercisability schedule thereby causing many of the ISOs to be deemed NSOs by Defendant; whether Defendant breached the Employment Agreements by imposing Trading Windows which prevented Class Members from exercising options at the times permitted under the Employment Agreements; whether Defendant knowingly intended to deceive Plaintiff and purported Class Members by the foregoing conduct; whether Plaintiff and purported Class Members re-located their residences in reliance upon Defendant's promises.

The questions of law and fact common to Class Members predominate over any questions affecting only individual members and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Moreover, Plaintiff's claims are typical of the claims of all other Class Members, and Plaintiff will fairly and adequately represent the interests of the other Class Members because Plaintiff has retained counsel with substantial experience in prosecution complex litigation and class actions.  Plaintiff and his counsel are committed to prosecuting this action on behalf of Class Members and have the financial resources to do so.

Plaintiff intends to seek certification of the class(es) and subclass in accordance with the schedule outlined below.

**B.**     **Defendant's Position**

Defendant believes that the class action waiver in the Arbitration Agreement Plaintiff signed with Uber is enforceable and precludes Plaintiff's class claims.  (*See* Dkt. 20).  Should

the Court deny Defendant's Motion to Compel Arbitration of Plaintiff's Individual Claims and Stay Class Claims, or in the Alternative, Stay Entire Proceeding, Defendant will oppose any motion to certify a class.

## X.   RELATED CASES

*McElrath v. Uber Technologies, Inc*., Case No. CGC-16-551748, Superior Court of the State of California, County of San Francisco, filed May 2, 2016.

## XI.   RELIEF

### A.   Plaintiff's Position

Plaintiff seeks the following relief on behalf of himself and the putative Class: (i) actual, compensatory, and statutory damages; (ii) statutory double damages; (iii) punitive damages; (iv) specific performance; (v) injunctive relief; (vi) imposition of constructive trusts and restitution and disgorgement of any benefits wrongfully received or obtained by the Defendant; (vii) declaratory relief; (viii) pre- and post-judgment interest at the highest applicable legal rates; (ix) attorneys' fees and litigation expenses incurred through trial and any appeals; (x) costs of suit, and; (xi) such other and further relief that this Court deems just and proper.

### B.   Defendant's Position

Plaintiff's claims have no merit, and he is not entitled to relief of any kind.

## XII.   SETTLEMENT AND ADR

The parties agree that early private mediation may be appropriate in this case and intend to file a Stipulation and Proposed Order Selecting ADR Process.

## XIII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The Parties have consented to have United States magistrate judge Jacqueline Scott Corley conduct all further proceedings in this case, including trial and entry of final judgment.

## XIV.   OTHER REFERENCES

The parties do not identify any potential references at this time.

## XV.   NARROWING OF ISSUES

### A.   Plaintiff's Position

Plaintiff does not believe issue-narrowing will be helpful in this case.

### B. Defendant's Position

Defendant respectfully submits that it is premature to consider agreement to narrow issues for trial.

## XVI. EXPEDITED TRIAL PROCEDURE

At this time, the Parties do not believe this case is appropriate for expedited trial procedures.

## XVII. SCHEDULING

### A. Plaintiff's Position

Plaintiff proposes the following schedule:

| | |
|---|---|
| Deadline for amending pleadings | May 30, 2017 |
| Designation of experts | November 9, 2017 |
| Fact discovery cut-off | November 17, 2017 |
| Hearing of dispositive motions | January 15, 2018 |
| Expert discovery cut-off | February 2, 2018 |
| Pre-trial conference | May 2, 2018 |
| Trial | May 9, 2018 |

### B. Defendant's Position

Defendant disagrees that the schedule set forth in Plaintiff's position is appropriate, but in any event, respectfully submits that it is premature to consider a case schedule until Defendant's Motion to Compel Arbitration of Plaintiff's Individual Claims and Stay Class Claims, or in the Alternative, Stay Entire Proceeding is decided, as the Court's decision on that motion may affect the scope and/or timing of this case.

## XVIII. TRIAL

### A. Plaintiff's Position

Plaintiff estimates an expected length of trial of 3-4 weeks.

### B. Defendant's Position

Defendant respectfully submits that it is premature to estimate an expected length of the trial.

**XIX.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

The Parties have filed Certificates of Interested Entities or Persons.

Pursuant to Federal Rule of Civil Procedure 7.1, Plaintiff states that Plaintiff and the putative class members (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of the proceeding:

Pursuant to Federal Rule of Civil Procedure 7.1, Uber states that it is a privately-held corporation with no parent corporation or publicly-held corporation that owns 10 percent or more of its stock. Pursuant to Civil Local Rule 3-15, Uber certifies that as of this date no such interest is known other than that of the named parties to the action.

**XX.  OTHER ISSUES**

The Parties do no currently anticipated any other issues.

Dated: March 16, 2017                         PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP

By: /s/ R. Scott Erlewine
     R. Scott Erlewine
     Attorneys for Plaintiff

Dated: March 16, 2017                         COOLEY LLP

By: /s/ Patrick E. Gibbs
     Patrick E. Gibbs
     Attorneys for Defendant
     Uber Technologies, Inc.

**ATTESTATION**

I, R. Scott Erlewine, am the ECF user whose identification and password is being used to file the instant document.  Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all counsel whose electronic signatures appear above provided their authority and concurrence to file this document.

/s/ R. Scott Erlewine
R. Scott Erlewine