UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENZA H. MCELRATH,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 16-cv-07241-JSC<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION AND GRANTING MOTION TO STAY PROCEEDINGS**<br><br>Re: Dkt. No. 18 |

In this putative class action, Defendant Uber Technologies, Inc.'s ("Uber") moves to compel arbitration of Plaintiff's individual claims and to stay the class claims, or alternatively, to stay the entire action. (Dkt. No. 18.) The primary issue concerns whether Uber's Alternative Dispute Resolution Agreement, which contains a class action waiver, is enforceable under *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir 2016). After this action was filed, the Supreme Court granted *certiorari* of *Morris*. *See Ernst & Young v. Morris*, 2017 WL 125665 (Jan. 13, 2017). As compelling Plaintiff to arbitrate his individual claims would run afoul of *Morris*, the Court DENIES the motion to compel arbitration. However, in light of the significance of *Morris* to this case, the Court STAYS proceedings pending the Supreme Court's ruling.

## BACKGROUND

Uber is an online logistics and transportation company located in San Francisco, California. (Complaint at ¶ 8.) Uber develops, markets, and operates a mobile "app" which allows customers to submit trip requests with their smartphones, which connects the customer to a nearby Uber driver. The driver then picks the customer up and drives them to their destination. (*Id*.) In mid-2014, Plaintiff was recruited by Uber and another technology company for employment as a software engineer. (*Id*. at ¶ 27.) Relying primarily on Uber's offer to provide

1

Plaintiff with 20,000 Incentive Stock Options ("ISO"), Plaintiff joined Uber. (*Id.*)

Plaintiff subsequently entered into an Employment Agreement with Uber. Among other things, the Agreement promised Plaintiff 20,000 ISOs "to the maximum extent allowed by the tax code" and that an ISO-qualifying exercise schedule would apply, specifically: "[t]he Option shall vest and become exercisable at the rate of 25% of the total number of option shares after the first 12 months of continuous service and the remaining option shares shall become vested and exercisable in equal monthly installments over the next three years of continuous service." (*Id.* at ¶ 28.)

The Employment Agreement included (1) an Offer Letter, (2) a Confidential Information and Invention Assignment Agreement, (3) and an Alternate Dispute Resolution Agreement. (Dkt. No. 1-1 at 1-9; Dkt. No. 1-2 at 1-24.) The Offer Letter required Plaintiff to sign the Employment Agreement, and noted that he must agree that all disputes relating to his employment would be fully and finally resolved by binding arbitration. (Dkt. No. 1-1 at ¶ 8(f).) The Alternate Dispute Resolution Agreement ("The ADR Agreement"), which Plaintiff also signed, states that it is governed by the Federal Arbitration Act, 9 U.S.C. Section 1 and covers "any disputes." (Dkt. No. 18-4 at 10-11.) The ADR Agreement also contains a class action waiver:

> You and the Company agree to bring any dispute in arbitration on an individual basis only and not on a class collective or private attorney general representative basis. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective, representative or private attorney general action, or as a member in any purported class, collective, representative or private attorney general proceeding, including without limitation pending but not certified class actions ("Class Action Waiver"). Disputes regarding the validity and enforceability of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. In any case in which (1) the dispute is filed as a class, collective, representative or private attorney general action and (2) a civil court of competent jurisdiction finds all or part of the Class Action Waiver unenforceable, the class, collective, representative and/or private attorney general action must be litigated in a civil court of competent jurisdiction, but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration.

(Dkt. No. 18-4 at 11.)

Approximately two months after beginning work, Plaintiff received a Notice of Stock Option Grant, granting him the promised number of options (20,000). The notice stated it was an

1  "Incentive Stock Option." (Dkt. No. 1 at ¶ 30.) However, the Notice contained a different and
2  accelerated exercisability schedule, "allowing the grantee to exercise all the options after six
3  months, regardless of the vesting schedule." (*Id*.) Plaintiff contends Defendant failed to state in
4  the Notice that this was a material change from the Employment Agreement, and that Defendant's
5  position was that most of the options would be disqualified from ISO treatment. (*Id*.)

6  In or about April 2015, Defendant adopted an online stock administration system where
7  Plaintiff discovered most of his options were Non-Qualified Stock Options ("NSO"), not ISO as
8  promised. (*Id*. at ¶ 31.) Of the 20,000 stocks, Defendant deemed 14,000 as NSO, and the
9  remaining 6,000 as ISO. (*Id*.) In January 2016, Plaintiff attempted to exercise the options
10 Defendant claimed to be NSOs, and was informed he must immediately pay taxes on the
11 transaction for Defendant to recognize the exercise. As a result of the tax requirement, Plaintiff
12 was unable to exercise all of his vested NSO options. (*Id*. at ¶ 32.)

13 Shortly thereafter, Plaintiff filed an action against Uber in San Francisco Superior Court,
14 alleging claims under the Private Attorney General Act ("PAGA"), as well as two claims of fraud.
15 (Dkt. No. 20-1 at ¶¶ 3-4.) Plaintiff later amended the state court complaint to allege only a PAGA
16 claim. On February 6, 2017, upon the parties' request, the state action was stayed pending final
17 judgment in this action or further order of the state court. (Dkt. No. 20-1 at ¶10.)

18 Seven months after filing suit in state court, Plaintiff filed this putative class action in this
19 Court alleging six claims for relief under California law. All the claims are premised on Plaintiff's
20 allegation that Defendant represented to Plaintiff and the putative class that they would receive
21 20,000 ISO stocks, but most of what they were given were NSO.

22 Defendant now moves to compel arbitration seeking to enforce the ADR Agreement and
23 class action waiver. (Dkt. No. 18.)

## Legal Standard

25 The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2-16, espouses a general policy
26 favoring arbitration agreements. *AT&T Mobility* v. *Concepcion*, 563 U.S. 333, 339 (2011).
27 Federal courts are required to rigorously enforce an agreement to arbitrate. *Hall St*. *Assoc*., *L.L.C*.
28 *v*. *Mattel*, *Inc*., 552 U.S. 576, 582 (2008). The court must direct parties to proceed to arbitration

should it determine: (1) that a valid arbitration agreement exists; and (2) that the agreement encompasses the dispute at issue. *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013); *see also* 9 U.S.C. § 4 ("If a court ... [is] satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.") "The party seeking to compel arbitration bears the burden of proving the existence of a valid agreement by a preponderance of the evidence." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (internal citation and quotation marks omitted). Courts shall "resolve any ambiguities as to the scope of the arbitration clause itself ... in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

## DISCUSSION

Uber seeks to compel arbitration of Plaintiff's claims solely on an individual and not collective or representative basis pursuant to the ADR Agreement. Plaintiff, for his part, urges that the Agreement prohibits him from engaging in concerted activity and is unenforceable under *Morris v. Ernst & Young*, 834 F.3d 975 (9th. Cir. 2016).

### I.     The Class Action Waiver is Unenforceable

In *Morris*, Ernst & Young moved to compel arbitration in response to Plaintiffs' putative class action brought under the Fair Labor Standards Act and California labor law. *Morris*, 834 F.3d at 979. Ernst & Young contended that the action violated Plaintiffs' employment agreements and in particular the concerted action waiver which required employees to "(1) pursue legal claims against Ernst & Young exclusively through arbitration and (2) arbitrate only as individuals and in separate proceedings." *Id*. In opposition, Plaintiffs alleged the arbitration agreement's class waiver violated Section 7 of the National Labor Relations Act ("NLRA"), which grants employees the right to "self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. The District Court granted the motion to compel arbitration and dismissed the case.

4

The Ninth Circuit reversed. In doing so, the Ninth Circuit noted that "Section 7 protects a range of concerted employee activity, including the right to seek to improve working conditions through resort to administrative and judicial forums." *Morris*, 834 F.3d at 981 (internal citation and quotation marks omitted). A lawsuit filed in good faith by a group of employees to "achieve more favorable terms or conditions of employment is concerted activity under Section 7 of the National Labor Relations Act." *Id*. at 981-82 (internal quotation marks omitted). The NLRA thus "establish[es] the right of employees to pursue work-related legal claims, and to do so together." *Id*. at 982. The court concluded that Ernst & Young's requirement that employees pursue work-related claims individually was the "very antithesis of [Section] 7's substantive right to pursue concerted work-related legal claims." *Id*. at 983 (internal citation and quotation marks omitted). The concerted action waiver was therefore unenforceable due to the NLRA. *Id*. at 983-84.

Here, the class action waiver's prohibition against concerted activity cannot be reconciled with *Morris*. As in *Morris*, the ADR Agreement does not provide any opportunity for a prospective employee to opt-out, and was instead a mandatory condition of Plaintiff's employment. *See Morris*, 834 F.3d at 982 n.4 (contrasting *Johnmohammadi v. Bloomingdale's Inc.*, 755 F. 3d 1072, 1077 (9th Cir. 2014), where there was no NLRA violation because the employee could have opted out of the arbitration agreement). Accordingly, the class action waiver is unenforceable, and the question becomes whether—as Defendant insists—the waiver can be severed from the ADR Agreement.

**II.     The Class Action Waiver is Not Severable**

Defendant's primary argument in favor of arbitration is that the Court should sever the class action waiver and compel arbitration of Plaintiff's individual claims. The ADR Agreement's severability clause provides: "[t]he Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver shall be severable *in any case in which the dispute is filed as an individual action* and severance is necessary to ensure that the individual action proceeds in arbitration." (Dkt. No. 18-4 at 11.) (emphasis added). However, the action before the Court is not an individual one, as Plaintiff brings all of his claims on behalf of a class. Accordingly, the ADR

5

1  Agreement's severability clause does not apply.

2  When an illegal provision not targeting arbitration is found in an arbitration agreement, the
3  Federal Arbitration Act ("FAA") treats the contract like any other; the FAA recognizes a general
4  contract defense of illegality. *See* 9 U.S.C. § 2; *Concepcion*, 563 U.S. at 339. The provision may
5  be excised or the district court may decline enforcement of the contract altogether. *See Circuit*
6  *City Stores*, *Inc.*, *v*. *Mantor*, 335 F.3d 1101, 1109 (9th Cir. 2003); *see also* 8 *Williston on*
7  *Contracts* § 19:70 (4th ed. 1990) ("Illegal portions of a contractual agreement may be severed if
8  the illegal provision is not central to the parties' agreement."). Defendant thus argues that even if
9  the contract's severability clause does not apply, the class action waiver is still severable.
10  Defendant cites other courts in the Ninth Circuit which have enforced "similar arbitration
11  agreements containing severable class waivers." (Dkt. No. 18 at 17.) The Court is unpersuaded.
12  Although *Galvan v*. *Michael Kors USA Holdings*, *Inc*., No. 16-7379-BRO, 2017 WL 253985, at
13  *10 (C.D. Cal. Jan. 19, 2017), involved a similar class waiver, and the court indicated that
14  excising offending portions may save the remainder of an agreement, the court did not sever the
15  offending clause because the agreement contained an opt-out clause and thus did not violate
16  *Morris*. *Id*. at *9. Defendant's attempt to wield *Gerton v*. *Fortiss*, *LLC*, No. 15-4805-TEH, 2016
17  WL 613011, at *6 (N.D. Cal. Feb. 16, 2016), is similarly unavailing as it was decided pre-*Morris*.

18  Further, and most importantly, Uber has not shown that the ADR Agreement would
19  survive *Morris* if the Court stays the class claims and orders Plaintiff to arbitrate his individual
20  claims. When addressing whether to sever a contractual provision, courts look to what the
21  remainder of the agreement will look like without the provision in question. *See Davis v.*
22  *O'Melveny & Myers*, 485 F.3d 1066, 1084 (9th Cir. 2007), *overruled on other grounds by*
23  *Ferguson v*. *Corinthian Colleges*, *Inc*., 733 F.3d 928, 933 (9th Cir. 2013). Here, excising the class
24  action waiver does not cure the Section 7 NLRA problem because the ADR Agreement contains a
25  clause stating that if the class action waiver is found unenforceable, the Agreement is silent as to
26  whether Plaintiff can arbitrate on behalf of a class. (Dkt. No. 18-4 at 11.) If an agreement does
27  not establish that the parties contractually agreed to class-wide arbitration, a court cannot compel
28  class arbitration. *Stolt-Nielsen S.A. v. Animal Feeds Int'l. Corp.*, 559 U.S. 662, 684 (2010). Since

6

it is undisputed the parties here did not so agree, the arbitration can proceed only on Plaintiff's individual claims, which is what Uber seeks. But Uber has not shown that if the arbitration of Plaintiff's individual claims is completed before the class claims are tried, Plaintiff would still have standing to pursue the class claims in federal court. He likely would not. *See Douglas v. U.S. Dist. Court for Cent. Dist. of California*, 495 F.3d 1062, 1068-69 (9th Cir. 2007) ("If [Plaintiff's] individual claim is rendered moot because it is fully satisfied as a result of the arbitration, he would lose his status as class representative because he would no longer have a concrete stake in the controversy.") In other words, requiring Plaintiff to first arbitrate his individual claims leads to the same result as if the class action waiver was enforced. Thus, *Morris* bars the relief Uber seeks.

*Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017), does not persuade the Court otherwise. There the court did not cite *Morris*, let alone explain how, consistent with *Morris*, a court may compel a plaintiff bringing claims on behalf of a class to arbitrate his individual claims before the class claims are resolved. Thus, the entire arbitration Agreement is unenforceable under current Ninth Circuit law.

### III. Whether the Arbitration Agreement is Unconscionable

Because the class waiver is unenforceable and the class-action waiver cannot be severed, the Court need not address the parties' arguments regarding whether the ADR Agreement is unconscionable.

### IV. A Stay is Appropriate Pending the Supreme Court's Decision in *Morris*

Defendant's alternative argument for a stay pending the Supreme Court's resolution of *Morris* is more persuasive.

As a preliminary matter, the Court must resolve the parties' dispute over the proper legal standard for a stay of proceedings. Defendant applies the factors set forth in *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936) and *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962), which include:

> (1) the possible damage which may result from granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues,

>proof, and questions of law which could be expected to result from a stay.

*CMAX*, 300 F.2d at 268.

Plaintiff applies the factors set forth in *Nken v. Holder*, which would require this court to consider: (1) a likelihood to succeed on the merits; (2) irreparable injury absent a stay; (3) substantial injury; and (4) public interest. 556 U.S. 418, 426 (2009).

Another court in this District recently addressed this very issue and concluded the *Landis* factors govern where a party seeks a stay pending resolution of a separate court action. *See Lal v. Capital One Financial Corp.*, No. 16-6674-BLF, 2016 WL 282895, at *2-3 (N.D. Cal. Jan. 23, 2017). The court reasoned that *Nken* addresses whether to stay the enforcement of a judgment, rather than staying an action pending disposition of an appeal. *Id*. at *2-3. Here, the same rationale applies—the stay is not of a judgment, but rather pending disposition of a case before the Supreme Court that will significantly impact the instant case. Thus, *Landis* controls the propriety of granting a stay in this case.

Under *Landis*, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." 299 U.S. at 254. However, "[o]nly in rare circumstances will a litigant in one case be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id*. at 255. A district court's decision to grant or deny a *Landis* stay is a matter of discretion. *Dependable Highway Exp.*, *Inc*. *v*. *Navigators Ins*. *Co*., 498 F.3d 1059, 1066 (9th Cir. 2007). The proponent of a stay has the burden of proving such a discretionary stay is justified. *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

**1.    Possible Damage from Granting Stay**

The first *Landis* factor considers the possible damage that could arise from granting the stay. *CMAX*, 300 F.2d at 268. Defendant argues possible harm to Plaintiff is minimal because the *Morris* decision will likely be issued within a year per the Supreme Court's customary practice after granting certification of a petition. Although Plaintiff counters that a stay will deprive Plaintiff and class members the relief owed to them, the Ninth Circuit has held monetary recovery cannot serve as the foundation to deny a stay. *Lockyer v*. *Mirant Corp*., 398 F.3d 1098, 1110 (9th

8

Cir. 2005).  Further, the stay is of short, not indefinite, duration, and this case turns in large part on the meaning of written agreements rather than the unrecorded memories of witnesses.

Thus, the first factor weighs in favor of granting a stay.

### 2. Possible Hardship or Inequity from Denying Stay

The second factor considers the possible harm from requiring Defendant to litigate while *Morris* is pending in the Supreme Court.  *CMAX*, 300 F.2d at 268.  Defendant argues "if the Supreme Court overturns *Morris*, the ADR Agreement is enforceable and Plaintiff will be precluded from bringing his putative class action." (*Id.*) (internal citations omitted).  Without a stay, Defendant will be required to defend a large putative class action that may be rendered moot and unnecessary by the *Morris* decision.

Plaintiff counters that the Supreme Court's decision is too far away and entreats the Court to follow two cases where courts in this District refused to grant stays based on the amount of time required for the Supreme Court to issue an opinion in *Morris*.  *See Daughtery v. SolarCity Corp.*, No. 16-5155-WHA, 2017 WL 386253, at *4 (N.D. Cal. Jan. 26, 2017)("A decision in *Morris* remains many months, perhaps even more than a year away.  Given the extent of that possible delay, a stay is not warranted, particularly because much of the discovery in this action would be useful both here and in any eventual arbitration."); *Echevarria v. Aerotek*, *Inc.*, No. 16-4041-BLF, 2017 WL 24877, at *3 (N.D. Cal. Jan. 3, 2017)("[T]his Court would not be inclined to stay litigation of this case for the length of time necessary to permit the Supreme Court to issue a decision on the merits.")  However, another court in this District granted a stay because the issue before the Supreme Court is central to the case – a fact also true here.  *Mackall v. Healthsource Global Staffing*, *Inc.*, No.16-3810-WHO, Dkt. No. 55 (N.D. Cal. Jan. 18, 2017).  Although it is unlikely *Morris* will be resolved this Supreme Court term, it does not appear that a decision on the merits is more than a year away.  While any estimate regarding when the Supreme Court will issue its *Morris* opinion is necessarily somewhat speculative, two factors are concrete: this case is in its early stages, and the outcome of *Morris* will have a significant impact on this case.  Thus, this factor weighs slightly in favor of a stay.

### 3. Orderly Course of Justice

The final *Landis* factor considers whether a stay will complicate or simplify the issues before it. *CMAX*, 300 F.2d at 268. Defendant argues generally that a stay is in the interest of judicial economy and the orderly course of justice because the Supreme Court's *Morris* decision may foreclose Plaintiff's class claim. Thus, granting the stay would conserve resources which would be unnecessarily expended reviewing the adequacy of the pleadings, resolving discovery disputes, and considering class certification. Plaintiff does not squarely address whether a stay will complicate or simplify the issues; however, Plaintiff argues that no matter the resolution of *Morris*, he will be entitled to bring his case in some forum, and discovery into the underlying claim is not prejudicial because it will occur regardless of the outcome in *Morris*.

Whether this case can proceed as a class action turns squarely on the outcome of the Supreme Court's review of *Morris*. Regardless of whether the Supreme Court affirms or overrules *Morris*, the issues before the Court will be simplified. This factor too thus weighs in favor of stay.

\* \* \*

Because the majority of *Landis* factors weigh in favor of granting a stay, and the issue before the Supreme Court is central to the issue in the instant case, a stay of proceedings until the Supreme Court resolves *Morris* is appropriate.

### CONCLUSION

For the reasons stated above, the Court DENIES Defendant's motion to compel arbitration, and STAYS proceedings pending the Supreme Court's decision in *Morris*. The Court will hold a case management conference on December 7, 2017 at 1:30 p.m. with an updated case management statement due one week earlier. If the Supreme Court takes some action in the interim which calls into question the Court's stay, the parties shall contact the Court's Courtroom Deputy to schedule an earlier case management conference.

**IT IS SO ORDERED.**

Dated: March 30, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

10